[No. 49629-8-I.   Division One.   April 5, 2004.]

SNOHOMISH COUNTY FIRE PROTECTION DISTRICT No. 1, *Appellant*, v. THE WASHINGTON STATE BOUNDARY REVIEW BOARD FOR SNOHOMISH COUNTY ET AL., *Respondents*.

74

*Brian K. Snure* and *Clark B. Snure* (of *Snure Regeimbal & Burke, P.L.L.C.*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Jason J. Cummings, Deputy*; and *Michael H. Himes, Richard E. McCann*, and *Katrina R. Kelly* (of *Perkins Coie, L.L.P.*), for respondents.

COLEMAN, J. — The property owner petition method of annexation has been held not to violate the privileges and immunities clause of the Washington Constitution in *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 83 P.3d 419 (2004), which vacated its earlier decision holding that method to be unconstitutional in 145 Wn.2d 702, 42 P.3d 394 (2002). Thus, the Washington State Boundary Review Board for Snohomish County (BRB) decision approving the city of Everett's (City) annexation of the Murphy's Corner area using this method is not invalid on this ground.

The City's annexation is also challenged on the grounds that the BRB lacked jurisdiction to consider the annexation because a mandatory 180-day filing period for the City's notice of intention to annex had expired and the petition failed to conform to statutory criteria. We hold that there was no violation because the 180-day filing period began to run upon the filing of the 75 percent property owner petition, not the 10 percent petition, because only the 75 percent petition is required to contain the information necessary for proper BRB review. Because the appellant failed to raise its remaining arguments before the BRB, they are deemed waived. We affirm the BRB.

## FACTS

A group of property owners in Murphy's Corner, an area immediately south of the Everett city boundary, initiated annexation proceedings in 1998. On November 4, 1998, the property owners first filed a notice with the City of their intention to commence annexation proceedings. That notice, approved by the City on November 18, 1998, was signed by the owners of not less than 10 percent in value of

the property to be annexed (the 10 percent petition). The property owners then gathered signatures on an annexation petition, which contained the signatures of the owners of at least 75 percent of the assessed value of the property in the area to be annexed, as required by RCW 35.13.130 (the 75 percent petition). The 75 percent petition was stamped "received" by the City on November 3, 1999, and verified by the Snohomish County assessor on November 4, 1999. The City passed a resolution accepting the 75 percent petition, and on February 24, 2000, it filed with the BRB its notice of intention to annex Murphy's Corner.

The Snohomish County Fire Protection District No. 1 (District) filed a request for review of the proposed annexation with the BRB. The District challenged the annexation on a number of bases, including the constitutionality of the property owner petition method of annexation and the timeliness of the City's notice to the BRB. Following a public hearing, the BRB approved the annexation. In its appeal to the superior court, the District refined its constitutional argument to include a challenge under article I, section 12, of the Washington Constitution—the privileges and immunities clause. The superior court affirmed the BRB.

## DISCUSSION

We begin with an overview of the landowner petition process. Two separate petitions are required under the petition method of annexation. The process begins with the presentation of a petition signed by the owners of at least 10 percent of the assessed value of property within the area to be annexed. RCW 35.13.125.[1] The purpose of the 10 percent petition is to "notify the legislative body of the city or town

---

[1] RCW 35.13.125 states:

Proceedings for the annexation of territory pursuant to RCW 35.13.130, 35.13.140, 35.13.150, 35.13.160 and 35.13.170 shall be commenced as provided in this section. Prior to the circulation of a petition for annexation, the initiating party or parties who, except as provided in RCW 28A.335.110, shall be either not less than ten percent of the residents of the area to be annexed or the owners of not less than ten percent in value, according to the assessed valuation for

in writing of [the petitioners'] intention to commence annexation proceedings." RCW 35.13.125. The city may accept, reject, or modify the 10 percent petition. RCW 35.13.125. If the city accepts the petition, the city must indicate

> whether it shall require the simultaneous adoption of the comprehensive plan if such plan has been prepared and filed for the area to be annexed as provided for in RCW 35.13.177 and 35.13.178, and whether it shall require the assumption of all or of any portion of existing city or town indebtedness by the area to be annexed.

RCW 35.13.125. The next step in the process after approval is to circulate the annexation petition, or 75 percent petition. As the name implies, this second petition requires the signatures of the owners of at least 75 percent of the assessed value of the property within the area to be annexed. RCW 35.13.130. The 75 percent petition must describe the property to be annexed more explicitly than the 10 percent petition, in accordance with six criteria set forth in RCW 35.13.130.[2] This includes a legal description of the property. When this petition is filed with the city, the

---

general taxation of the property for which annexation is petitioned, shall notify the legislative body of the city or town in writing of their intention to commence annexation proceedings. The legislative body shall set a date, not later than sixty days after the filing of the request, for a meeting with the initiating parties to determine whether the city or town will accept, reject, or geographically modify the proposed annexation, whether it shall require the simultaneous adoption of the comprehensive plan if such plan has been prepared and filed for the area to be annexed as provided for in RCW 35.13.177 and 35.13.178, and whether it shall require the assumption of all or of any portion of existing city or town indebtedness by the area to be annexed. If the legislative body requires the assumption of all or of any portion of indebtedness and/or the adoption of a comprehensive plan, it shall record this action in its minutes and the petition for annexation shall be so drawn as to clearly indicate this fact. There shall be no appeal from the decision of the legislative body.

[2] RCW 35.13.130 states:

A petition for annexation of an area contiguous to a city or town may be made in writing addressed to and filed with the legislative body of the municipality to which annexation is desired. Except where all the property sought to be annexed is property of a school district, and the school directors thereof file the petition for annexation as in RCW 28A.335.110 authorized, the petition must be signed by the owners of not less than seventy-five percent in value according to the assessed valuation for general taxation of the property for which annexation is petitioned: PROVIDED, That in cities and towns with populations greater

city's governing body must set a public hearing on the annexation. RCW 35.13.140. Following the public hearing, the governing body adopts or rejects the annexation petition by ordinance. RCW 35.13.150.

▮ This method of annexation has been held not to violate article I, section 12 of the Washington Constitution. *See Grant County*, 150 Wn.2d at 816. We therefore reject the District's challenge to the constitutionality of the property owner petition method.

The District further argues that the BRB did not have jurisdiction to review the annexation petition because the City did not file its notice of intention with the BRB within 180 days of its approval of the 10 percent petition. The City responds that the approval of a 10 percent petition does not start the 180-day limitation period and that the City's notice of intention was timely because it was filed within 180 days of the approval of the 75 percent petition. To resolve this dispute, we must decide when the annexation has been "proposed" for purposes of triggering the 180-day deadline for the City to file its notice of intention with the BRB under RCW 36.93.090, which states:

> Whenever any of the following described actions are proposed in a county in which a [boundary review] board has been established, the initiators of the action shall file within one hundred eighty days a *notice of intention* with the board: PROVIDED, That when the initiator is the legislative body of a governmental unit, the notice of intention may be filed immediately following the body's first acceptance or approval of

than one hundred sixty thousand located east of the Cascade mountains, the owner of tax exempt property may sign an annexation petition and have the tax exempt property annexed into the city or town, but the value of the tax exempt property shall not be used in calculating the sufficiency of the required property owner signatures unless only tax exempt property is proposed to be annexed into the city or town. The petition shall set forth a description of the property according to government legal subdivisions or legal plats which is in compliance with RCW 35.02.170, and shall be accompanied by a plat which outlines the boundaries of the property sought to be annexed. If the legislative body has required the assumption of all or of any portion of city or town indebtedness by the area annexed, and/or the adoption of a comprehensive plan for the area to be annexed, these facts, together with a quotation of the minute entry of such requirement or requirements shall be set forth in the petition.

the action. The board may review any such proposed actions pertaining to:

(1) The . . . [c]reation, incorporation, or change in the boundary, other than a consolidation, of any city, town, or special purpose district . . . .

If, as the District argues, the annexation was "proposed" when the 10 percent notice was approved by the City on November 18, 1998, then the notice of intention filed on February 24, 2000, was filed well beyond the 180-day deadline. But the above statute does not specify which event in the annexation process amounts to a "proposal" that triggers the mandatory 180-day period for filing a notice of intention.

When considering an undefined statutory term, this court considers the statute as a whole and attempts to harmonize its interpretation with other statutory provisions. *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001). Further, because this court prefers to give statutory language its common meaning, dictionary definitions are often helpful. *Heinsma*, 144 Wn.2d at 564. This court assumes that the legislature did not intend an absurd result and will construe statutes accordingly to effect legislative intent. *Esparza v. Skyreach Equip., Inc.*, 103 Wn. App. 916, 938, 15 P.3d 188 (2000), *review denied*, 144 Wn.2d 1004 (2001).

Both parties rely upon dictionary definitions of the term "proposal" to support their arguments under the "plain meaning" of this statute. But these definitions support both arguments, thereby illustrating that in the context of this statute, the term simply has no plain meaning. Rather, the language of RCW 36.93.090 allows a broad range of possible interpretations whenever an annexation has been proposed. A broad, literal reading of this language would require a governing body to file a notice of intention any time anyone suggested a boundary adjustment, regardless of the degree of formality or finality of the "proposal." Because this reading of the statute is obviously nonsensical, this court must construe the statute's ambiguity in the way

that makes the most sense in light of the legislative purpose embodied by the overall statutory scheme. *Esparza*, 103 Wn. App. at 938.

As between an interpretation of commencing the filing period from the date of filing the 10 percent petition—urged by the District, or the 75 percent petition—sought by the City, the most sensible reading is that the limitation period is triggered when the 75 percent petition is filed.

We note at the outset that although many of the particulars of the annexation had materialized once Everett approved the 10 percent petition and one could say that a "proposal" existed at that point, the City could take no action to complete the annexation until the owners of 75 percent of the property signed the annexation petition. *See* RCW 35.13.150 (city cannot pass annexation ordinance until 75 percent petition submitted). The District's interpretation of the statute would force a city in Everett's position to either file a premature *notice of intention* before it knew that enough property owners would sign the 75 percent petition, or start the process all over again if the 75 percent petition were not filed within 180 days of the 10 percent petition's acceptance. This would be a waste of the City's and the BRB's resources, and we will not read the statute as requiring such a result.

The District further argues that allowing the 180-day period to begin upon filing of the 75 percent petition impedes the policy of a speedy petition process, but other considerations outweigh this concern. For example, meaningful review of annexations by necessity requires information, such as a legal description, that by statute is not required until the 75 percent petition stage. RCW 35.13.130. Again, interpreting a statute to require BRB review before the initiators are required to submit information statutorily required for the annexation would be illogical and wasteful of BRB resources.

This does not mean, however, that we adopt the City's argument that the 180-day period begins to run only when the City *accepts* the 75 percent petition. Although the

statute's language leaves much to interpretation, it clearly requires that the time period begin to run at the point when a boundary adjustment is "proposed" by the "initiators of the action," not when it is "accepted" by the City. RCW 36.93.090. Accordingly, the 180-day period begins to run when the "initiators" of the action (the 75 percent property owners) file their 75 percent petition with the City. Regardless of whether the City takes further action to accept the petition, at that stage there has clearly been a "proposed action." Further, starting the 180-day period at that point encourages the City to act quickly in determining whether the signatures are valid and whether to approve or reject the petition. This result acknowledges the District's concerns for a speedy process while avoiding absurd results and is consistent with the language of the statute.

In this case, the exact filing date of the 75 percent petition is unclear from the record, but it was stamped "received" by the City on November 3, 1999, and was submitted to the county assessor on the same date. RCW 35A.01.040 requires the city officer with whom the petition is filed to submit the petition to the assessor within three days. Thus, even assuming a filing date of October 31, 1999, the notice of intention, which was filed 116 days later on February 24, 2000, was timely filed under RCW 36.93.090.

Although we conclude that the 180-day requirement was not violated, we must also address the City's argument that by invoking the BRB's jurisdiction, the District is precluded from raising any arguments challenging the BRB's jurisdiction.

■■ The District argues that the 180-day limitation period in RCW 36.93.090 is jurisdictional. Boundary review boards are quasi-judicial entities, which acquire their jurisdiction through statute. *See Graham Thrift Group, Inc. v. Pierce County*, 75 Wn. App. 263, 267, 877 P.2d 228 (1994) (holding 10-day mandatory filing period for administrative appeal acts as jurisdictional bar). As this court stated in *Leer v. Whatcom County Boundary Review Bd.*, 91 Wn. App. 117, 122, 957 P.2d 251 (1998), the BRB obtains jurisdiction

with the filing of a notice of intention and a request for review in accordance with the statute. It therefore follows that the *timely* filing of a notice of intention is a jurisdictional requirement. *See also Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 769, 903 P.2d 953 (1995) (holding that notice of intention does not confer jurisdiction until a timely request for review is filed). Accordingly, we hold that compliance with the 180-day filing deadline is a jurisdictional prerequisite.

■ While the BRB's jurisdiction was properly invoked by the District's request for review, this does not necessarily mean that the District is precluded from arguing that the 180-day requirement was not met. RCW 36.93.100(2) provides that "[a]ny governmental unit affected" may file a request for review. Furthermore, under RCW 36.93.160(6)(b), the superior court has the authority to reverse a BRB decision "[i]n excess of the statutory authority or jurisdiction of the board." These statutes place no restrictions on the types of issues that may be raised by the party seeking review, and the City cites no authority to the contrary. Regardless of who invoked the BRB's jurisdiction, jurisdictional issues may be raised by any party to the BRB proceedings.

■ Lastly, the District argues that this court should reverse the BRB because the 75 percent petition did not comply with the statutory criteria set out in RCW 35-.13.130. But because this argument is within the scope of the Board's authority and is not jurisdictional, it must be raised before the BRB in order to properly preserve it on appeal. *Leer*, 91 Wn. App. at 121 (citing limitations of RCW 36.93.160(5) on appeal of substantive issues). The District did not raise these arguments before the BRB, so they are deemed waived.

The District's reliance on *King County Water District No. 90 v. City of Renton*, 88 Wn. App. 214, 224, 944 P.2d 1067 (1997), is misplaced. In that case, this court held that the BRB lacked jurisdiction to consider an annexation. But that

was because the court held that the school district that signed the petition did not have the legal authority to do so. As a result, the petition was not supported by the owners of the requisite percentage of property value in the area to be annexed. *Leer* distinguished *King County Water Dist. No. 90*, holding that a petition's failure to comply with the technical requirements of the statute did not deprive the BRB of jurisdiction. *Leer*, 91 Wn. App. at 121-22. This case does not involve any allegation that the signatures on the petition were unauthorized or invalid. *Leer* is directly on point, therefore, and *King County Water Dist. No. 90* is inapposite.

We affirm.

AGID and SCHINDLER, JJ., concur
Review granted at 152 Wn.2d 1036 (2004).