[No. 75461-6.   En Banc.]
Argued March 10, 2005.     Decided August 11, 2005.

SNOHOMISH COUNTY FIRE PROTECTION DISTRICT No. 1, *Petitioner*, v. THE WASHINGTON STATE BOUNDARY REVIEW BOARD FOR SNOHOMISH COUNTY ET AL., *Respondents*.

*Brian K. Snure* and *Clark B. Snure* (of *Snure Regeimbal & Burke, P.L.L.C.*), for petitioner.

*Richard E. McCann, Michael H. Himes*, and *Katrina R. Kelly* (of *Perkins Coie, L.L.P.*) and *Janice E. Ellis, Prosecuting Attorney for Snohomish County*, and *Jason J. Cummings, Deputy*, for respondents.

¶1 OWENS, J. — The Washington State Boundary Review Board for Snohomish County (the Board) approved the city of Everett's (the City) annexation of an area south of the city limits. The Snohomish County Fire Protection District No. 1 (the District), a special purpose district within the area to be annexed, challenged the Board's approval of the annexation, contending that the City's failure to file a timely notice with the Board had deprived the Board of jurisdiction. At issue is which event in the direct petition method of annexation triggers the 180-day period during which "the initiators" of an annexation must file a "notice of intention" with the boundary review board. RCW 36.93-.090(1). We hold that RCW 36.93.090, in concert with chapter 35.13 RCW, requires notification of the boundary review board within 180 days of the filing of an annexation petition signed by owners of at least 75 percent of the assessed value of the property to be annexed. RCW 35.13-.130-.140. Because the City filed its notice with the Board within the limitations period, the Board had jurisdiction to review the annexation. We therefore affirm the Court of Appeals decision upholding the superior court's affirmance of the Board's approval of the annexation.

## FACTS

¶2 In 1998, a group of property owners in the Murphy's Corner area of Snohomish County, an area comprising 142 acres just south of the City's city limits, took the first step toward securing annexation by the direct petition method prescribed in RCW 35.13.125-.170. RCW 35.13.125 requires that, as "the initiating party or parties," property owners must own at least 10 percent of the assessed value of the property to be annexed and must "notify the legislative

body of the city or town in writing of their intention to commence annexation proceedings." The statute requires the legislative body to meet with "the initiating parties" within 60 days of "the filing of the request" (commonly termed "the 10 percent petition") in order "to determine whether the city or town will *accept, reject, or geographically modify* the proposed annexation, whether it shall require the simultaneous adoption of the comprehensive plan . . . , and whether it shall require the assumption of all or of any portion of existing city or town indebtedness by the area to be annexed." RCW 35.13.125 (emphasis added). By letter of November 18, 1998, the City notified Snohomish County that the city council had "approved [the] 10% petition for the Murphy's Corner Annexation on November 4, 1998."[1] While it is unclear from the record whether the city council, when accepting the property owners' request, made any geographical modifications to the proposed annexation area, the record does indicate that the council required the adoption of the comprehensive plan and the assumption of existing indebtedness. Under RCW 35.13.125, the city council's decision accepting the request could not be appealed.

¶3 Following the property owners' notification to the council "of their intention to commence annexation proceedings" and the council's November 4, 1998, approval of "the request," a "petition for annexation" was drafted for circulation. RCW 35.13.125. RCW 35.13.130 provides that the "petition for annexation" must contain a legal description of the property, a plat outlining the property boundaries, and a statement of the City's requirements regarding the annexed area's adoption of the comprehensive plan and assumption of any existing debt. The statute also requires

---

[1] 1 Administrative Record (AR) at 30. The 10 percent petition was not included in the record, leaving uncertain the date of its presentation to the city council. The District mistakenly identified November 18, 1998, as the date of the council's acceptance of the 10 percent request, and the Court of Appeals erringly identified November 4 and 18 as, respectively, the dates of presentation and acceptance. Am. Br. of Appellant at 4, 13, 22; Pet. for Review at 2; *Snohomish County Fire Prot. Dist. No. 1 v. Wash. State Boundary Review Bd.*, 121 Wn. App. 73, 75-76, 87 P.3d 1187 (2004).

that, prior to its filing with the municipality's legislative body, the petition must be signed by the owners of property comprising at least 75 percent of the assessed value of the property to be annexed. Here, the "petition for annexation" (commonly called "the 75 percent petition") was submitted to the Snohomish County Assessor's Office on November 3, 1999, and on the following day the assessor's office certified that the petition was sufficient, having been signed by the owners of property comprising 79 percent of the total assessed value of the area under annexation. While the record does not provide the date on which the 75 percent petition was filed, we may infer that the petition was filed at the earliest on Monday, November 1, 1999, the date of the last signature on the petition and two days prior to transmittal to the auditor.[2] On December 15, 1999, the council held a public hearing on the annexation and passed a resolution accepting the 75 percent petition. *See* RCW 35.13.140, .150.

¶4  Those initiating annexation by the direct petition method must not only follow RCW 35.13.125-.170, they must comply with chapter 36.93 RCW regarding review by the county's boundary review board.[3] RCW 36.93.090(1) requires that, whenever a "change in the boundary . . . of any city" is "proposed in a county in which a board has been established, the initiators of the action shall file within one hundred eighty days a notice of intention with the board." On February 24, 2000, the City filed with the Board a notice of intention to annex Murphy's Corner. Thus, the City filed its notice of intention 477 days after its approval of the 10 percent petition on November 4, 1998; no more than 115 days after the property owners filed the 75 percent petition; and 71 days after the City approved the 75 percent petition on December 15, 1999.

---

[2] RCW 35A.01.040(4) provides that, "[w]ithin three working days after the filing of a petition, the officer with whom the petition is filed shall transmit the petition to the county auditor." *See also* 1 AR at 32.

[3] RCW 36.93.170 and .180, respectively, set forth the factors that the board must consider and the objectives that the board must attempt to achieve.

¶5 On March 29, 2000, the District, a "governmental unit affected" by the proposed annexation, timely invoked the Board's jurisdiction and requested review.[4] The District argued, among other things, that the Board lacked jurisdiction since the City had failed to file a timely notice of intent. The four-member Board held a public hearing on May 24, 2000, and deliberated at a public hearing on June 13, 2000. The Board approved the annexation and on July 19, 2000, unanimously adopted its written findings and decision. Pursuant to RCW 36.93.160(5), the District appealed the Board's unanimous decision to Snohomish County Superior Court, but the court affirmed the Board's decision. The Court of Appeals likewise affirmed the Board. *Snohomish County Fire Prot. Dist. No. 1 v. Wash. State Boundary Review Bd.*, 121 Wn. App. 73, 87 P.3d 1187 (2004). We granted the District's petition for review.

## ISSUE

¶6 RCW 36.93.090 requires that, when an annexation has been "proposed," "the initiators" of the annexation must file "a notice of intention" with the county's boundary review board within 180 days. At what point in the direct petition process has an annexation action been "proposed," triggering the 180-day limitations period?

## ANALYSIS

■ ¶7 *Standard of Review.* On appeal to the superior court, the District contended that the Board lacked jurisdiction to consider the proposed annexation, given the City's failure to file its notice of intent with the Board within 180 days of the city council's acceptance of the 10

---

[4] RCW 36.93.100(2); 1 AR at 274. RCW 36.93.100 opens a 45-day window for board members, affected governmental units, registered voters residing in the annexation area, or owners of property within the area to request the boundary review board's review; if the board's jurisdiction is not invoked within the 45-day period, "the proposed action shall be deemed approved."

percent petition.[5] RCW 36.93.160(6)(b) provides that the superior court may reverse the decision of a boundary review board "if any substantial rights may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [i]n excess of the statutory authority or *jurisdiction of the board*." (Emphasis added.) This court reviews the jurisdiction issue de novo, relying on the evidence in the administrative record. RCW 36.93-.160(5); *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 671-72, 860 P.2d 1024 (1993).

■ ¶8 *Event in Annexation Process Triggering 180-Day Period for Filing Notice with Board*. RCW 36.93.090 provides as follows:

> Whenever any of the following described actions *are proposed* in a county in which a board has been established, the initiators of the action shall file within one hundred eighty days a notice of intention with the board: PROVIDED, That when the initiator is the legislative body of a governmental unit, the notice of intention may be filed immediately following the body's first acceptance or approval of the action. The board may review any such *proposed actions* pertaining to:
>
> (1) The: (a) Creation, incorporation, or change in the boundary . . . of any city. . . .

(Emphasis added.) The legislature did not explicitly identify in RCW 36.93.090 the step at which an annexation action is deemed "proposed." Where the plain meaning of a statute is not apparent, we may derive the legislature's intended meaning by consulting dictionary definitions of common terms or by considering "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002); *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001); *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

---

[5] The Court of Appeals concluded that the District's invocation of board review did not preclude the District "from arguing that the 180-day requirement was not met," since "jurisdictional issues may be raised by any party to the [board] proceedings." *Snohomish County Fire Prot. Dist. No. 1*, 121 Wn. App. at 82.

¶9 The parties have advocated different steps in the process as the event constituting the "proposed" action triggering the 180-day limitations period. The District argued that the annexation ripened into a "proposed" action on November 4, 1998, when the council decided to approve the 10 percent petition filed pursuant to RCW 35.13.125. *See* Am. Br. of Appellant at 19-24; Pet. for Review at 5-10. The City argued, however, that the limitations period did not begin to run until December 15, 1999, when the council adopted its resolution approving the 75 percent petition.[6] In the alternative, the City agreed with the conclusion of the Court of Appeals that the triggering event was the filing of the 75 percent petition, an event occurring at the earliest on November 1, 1999. *See Snohomish County Fire Prot. Dist. No. 1*, 121 Wn. App. at 81.

¶10 While dictionary definitions of "proposed" and "action" are too general to be decisive here, we can apprehend the legislature's intended meaning by reading RCW 36.93.090 as a whole, harmonizing its opening statement (that the initiators "*shall*" notify the board within 180 days of the proposed action) with its proviso (that, if the city's governing body is the initiator, it "*may*" notify the board "immediately following the body's first acceptance or approval of the action" (emphasis added)). By its plain language, the proviso carves out an exception for annexations initiated by a governing body. *See* RCW 35.13.015. That the proviso permits a city council initiating an annexation to notify the board after its first approval of the annexation plainly indicates that, where the initiating party is *not* the city council but a group of landowners, the city council's "first acceptance or approval of the action" is *not* regarded as the "proposed" action that opens the 180-day period for notifying the board. In other words, if the city council's first approval of the annexation (that is, its

---

[6] Contrary to the City's assertion, *see* Br. of Resp't City at 6, the superior court did not plainly conclude that the City's acceptance of the 75 percent petition was the triggering event; the superior court's memorandum left unclear whether presentation or acceptance of the 75 percent petition opened the 180-day limitations period. *See* Clerk's Papers at 18.

approval of the 10 percent petition) were the event trigger-
ing the 180-day period for notifying the board, the proviso
would be entirely redundant—the legislature would have
had no need to provide that a city council, as initiator, could
file its notice "immediately" after its "first acceptance or
approval of the action."

¶11  Reinforcing this interpretation of RCW 36.93.090 is
RCW 35.13.176, which precludes any city or town from
annexing property already included in another annexation
proposal that has reached a significant step in the annex-
ation process:

> After *a petition proposing an annexation by a city or town is
> filed with the city or town or the governing body of the city or
> town*, or after *a resolution proposing an annexation by a city or
> town has been adopted by the city or town governing body*, no
> territory included in the proposed annexation may be annexed
> by another city or town or incorporated into a city or town
> unless: (1) The boundary review board modifies the boundaries
> of the proposed annexation and removes the territory; (2) the
> boundary review board or review board created under RCW
> 35.13.171 rejects the proposed annexation; or (3) the city or
> town governing body rejects the proposed annexation or voters
> defeat the ballot proposition authorizing the annexation.

(Emphasis added.) The two points in the annexation process
that are sufficient to freeze the territory designated for
annexation are the filing of "a petition proposing an annex-
ation"—that is, the 75 percent petition[7]—or the city's adop-
tion of "a resolution proposing an annexation." RCW 35-
.13.176 thus mirrors the distinction made in the proviso of
RCW 36.93.090: where landowners initiate the annexation
by the direct petition method (*see* RCW 35.13.125-.170), the
process matures when the 75 percent petition is filed with
the city; where the city's governing body initiates the
annexation by the election method (*see* RCW 35.13.015),

---

[7] The phrase "petition proposing an annexation" can refer only to the 75 percent
petition, which the statutes consistently term "a [or the] petition for annexation."
RCW 35.13.125, .130, .140. The statutes do not term the 10 percent petition an
annexation petition; rather, it is a "notif[ication] . . . in writing" or a "request."
RCW 35.13.125.

the process reaches a comparable point with the city's first resolution proposing the annexation. RCW 35.13.176 also indicates that, with respect to the landowner annexation method, the filing of the 75 percent petition necessarily precedes the actions of the boundary review board. RCW 35.13.176(1), (2).

¶12 In sum, reading RCW 36.93.090 in its entirety (with attention to its proviso) and in conjunction with RCW 35.13.176, we conclude that, as to the direct petition method of annexation, the step at which the annexation action is "proposed" is the filing of the 75 percent petition with the city or its governing body.[8] This interpretation of the statute finds additional support in two policy considerations. As the Court of Appeals observed, Board review prior to the certification of the 75 percent petition "would be a waste of the City's and the [Board's] resources," should the initiators ultimately fail to present a sufficient 75 percent petition. *Snohomish County Fire Prot. Dist. No. 1,* 121 Wn. App. at 80. Moreover, "meaningful review of annexations by necessity requires information, such as a legal description, that by statute is not required until the 75 percent petition stage." *Id.*

## CONCLUSION

¶13 In light of the proviso in RCW 36.93.090 and the comparable language in RCW 35.13.176, we hold that the filing of the 75 percent petition is the "proposed" action that commences the 180-day period prescribed in RCW 36.93-.090 for notifying the boundary review board. Because the City's notice was filed with the Board well within the 180-day window, the Board had jurisdiction to review the

---

[8] In *Glenrose Cmty. Ass'n v. City of Spokane,* 93 Wn. App. 839, 971 P.2d 82, *review denied,* 138 Wn.2d 1009 (1999), Division Three of the Court of Appeals considered whether property owners bound by annexation covenants could be counted toward the necessary 75 percent. In dicta, the *Glenrose* court stated that "[i]t is only *after* Boundary Review Board approval that supporters of annexation must present the City Council with a petition signed by owners of 75 percent of the assessed property value." *Id.* at 850. To the extent the language in *Glenrose* conflicts with our holding in the present case, we disapprove *Glenrose.*

proposed action. We affirm the Court of Appeals decision upholding the superior court's affirmance of the Board's approval of the annexation.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.