[No. 32307-9-II.   Division Two.   November 22, 2005.]

JOHNSON FORESTRY CONTRACTING, INC., *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

16

*Jack L. Burtch*, for appellant.

*Robert M. McKenna, Attorney General*, and *Edward D. Callow, Assistant*, for respondent.

*Robert M. McKenna, Attorney General*, and *Bruce L. Turcott, Assistant*, for the Forest Practices Appeals Board.

¶1 BRIDGEWATER, J. — Johnson Forestry Contracting, Inc. (Johnson Forestry) appeals from an order affirming civil penalties for violations of the Forest Practices Act of 1974, chapter 76.09 RCW. We affirm.

¶2 Harvey Johnson, of Johnson Forestry, contacted the Department of Natural Resources (DNR) in Pacific County,

Washington, to express his intentions to log portions of Section 5 and Section 8 of Township 10 North, Range 9 West. Johnson submitted an application to DNR but erroneously omitted Section 5. On January 27, 2000, DNR approved Johnson Forestry's Forest Practices application to harvest timber on property located in Section 8. DNR also required, as condition for approval, a 100-foot riparian management zone.[1]

¶3 On November 20, DNR conducted a site visit and discovered Johnson Forestry had deviated from the conditions of the application, in violation of WAC 222-20-060.[2] Specifically, DNR found that Johnson Forestry harvested timber in Section 5. DNR also found that Johnson Forestry had cut lumber within 25 feet of a Type-1 water body. In response to the violations, DNR issued two notices to comply (NTCs), specifying appropriate remedial measures.[3]

¶4 In December, Johnson admitted to DNR foresters that Johnson Forestry did conduct the forest practices specified in the NTCs. Moreover, in its brief to this court, Johnson Forestry concedes, "there were sufficient facts to justify a finding of violations of the Forestry Practices Act." Br. of Appellant at 3.

¶5 On March 27, 2001, Johnson requested a brief adjudicative proceeding (BAP) through his counsel regarding the alleged violations identified in the NTCs. *See* RCW 34.05.482, .485. Counsel also submitted a request in writing to DNR asking that "further notices, including notice of hearing dates, are to be served on [counsel]." Administrative Record (AR) at 89.

---

[1] A riparian management zone is a protective buffer of trees required to remain on each side of a fish-bearing stream to protect water quality. *See* WAC 222-16-010; WAC 222-30-021.

[2] WAC 222-20-060 provides in relevant part: "Substantial deviation from a notification or an approved application requires a revised notification or application."

[3] NTC 08927, issued on March 12, 2001, governed the violations on Section 8. NTC 08928, also issued on March 12, 2001, governed the violations on Section 5. On April 12, 2001, DNR canceled NTC 08927 and it was replaced by NTC 08929. DNR sent a copy of the cancellation/replacement directly to Johnson Forestry's counsel.

¶6 The BAP took place on March 15, 2002.[4] On March 25, DNR issued a final order affirming both NTCs. On April 24, Johnson Forestry appealed this order to the Forest Practices Appeals Board (Board).

¶7 On October 25, 2001, while the BAP was pending, DNR issued Johnson an $8,000 civil penalty No. 00-C-WQT (civil penalty) under RCW 76.09.050[5] and WAC 222-20-010[6] for Johnson Forestry's violations of the application's conditions. DNR served the penalty directly on Johnson via certified mail. Johnson signed the return receipt on October 31. DNR did not serve a copy of the penalty on Johnson Forestry's counsel.

¶8 Johnson Forestry did not exercise its right under RCW 76.09.170(3) to request remission or mitigation of a civil penalty. Nor did Johnson Forestry file an appeal within 30 days of receiving the penalty as RCW 76.09.170(4) required. Rather, Johnson Forestry later included a challenge to the civil penalty in its appeal of the NTCs to the Board.

¶9 On August 19, 2003, the Board granted a motion for summary judgment in favor of DNR, holding that Johnson Forestry presented no genuine issues of material fact regarding the NTCs. Regarding the civil penalty, the Board reasoned that Johnson Forestry did not file a timely application for remission or mitigation or timely appeal as required under RCW 76.09.170. Further, because Johnson Forestry neglected to file for remission or mitigation or file an appeal in compliance with the statutory deadline, the civil penalty "became final, due and payable." Clerk's Papers at 17. The Board concluded that once final, the penalty

---

[4] RCW 76.09.090 requires DNR to schedule a requested hearing "not more than twenty days after receiving such request." Although this BAP took place nearly a year after requested, Johnson Forestry does not raise this as an issue on appeal. *See* RAP 10.3(a)(3), (g).

[5] RCW 76.09.050 governs applications for classes of forest practices.

[6] WAC 222-20-010 governs applications and notifications for forest practices under the Forest Practices Act of 1974.

was irrevocable. Therefore, the Board held that it did not have jurisdiction to hear the appeal.

¶10  On September 17, 2003, Johnson Forestry appealed the Board's decision to the Thurston County Superior Court, challenging the portion of the decision that dismissed its appeal regarding the civil penalty as untimely and arguing improper notice. On September 3, 2004, the superior court affirmed the Board's decision.

## I. Standard of Review

### A. *Administrative Procedure Act Standard*

¶11  In reviewing an administrative action, this court sits in the same position as the trial court and applies the Administrative Procedure Act (APA), chapter 34.05 RCW, standards directly to the agency's administrative record. *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 112 Wn. App. 291, 296, 49 P.3d 135 (2002) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)), *review denied*, 149 Wn.2d 1003 (2003). As the challenging party, Johnson Forestry bears the burden of demonstrating the invalidity of the agency action. RCW 34.05.570(1)(a). RCW 34.05.570(3) establishes nine grounds on which a party may challenge an agency's actions. *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 154 Wn.2d 224, 233, 110 P.3d 1132 (2005).

¶12  Here, although not expressly stated, it appears that Johnson Forestry challenges on grounds that the agency erroneously interpreted or applied the law. *See* RCW 34.05.570(3)(d). Johnson Forestry contends that the trial court erred, as a matter of law, when it affirmed the Board decision to enter a summary judgment in DNR's favor.

### B. *Summary Judgment Standard*

¶13  Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

We review summary judgment de novo, viewing the facts and all reasonable inferences from them in the light most favorable to the nonmoving party. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

¶14 The APA does not expressly authorize summary judgments, but case law has established that agencies may employ summary proceedings. *Kettle Range Conservation Group v. Dep't of Natural Res.*, 120 Wn. App. 434, 456, 85 P.3d 894 (2003) (citing *Eastlake Cmty. Council v. City of Seattle*, 64 Wn. App. 273, 276, 823 P.2d 1132, *review denied*, 119 Wn.2d 1005 (1992)), *review denied*, 152 Wn.2d 1026 (2004). Thus, the Board's regulations allow motions for summary judgment in accordance with CR 56. WAC 223--08-148(1).

¶15 Because this matter arises from a summary judgment and the facts are undisputed, we determine whether the Board's decision was erroneous as a matter of law. We review questions of law under RCW 34.05.570(3)(d) de novo but accord substantial weight to the agency's interpretation of the statutes it administers. *Superior Asphalt*, 112 Wn. App. at 296 (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988)).

## II. Service of Civil Penalty

■■■ ¶16 Johnson Forestry contends that DNR was obligated to serve the civil penalty on counsel because, after DNR issued the NTCs, Johnson Forestry requested that all further notices be served on its counsel. Johnson Forestry also argues that, under WAC 223-08-055, DNR was obligated to serve Johnson Forestry's civil penalty on counsel. These arguments are misplaced.

¶17 RCW 76.09.170 expressly requires DNR to serve notice of civil penalties by certified mail to "the person incurring . . . the violation." RCW 76.09.170(3). Nonetheless, Johnson Forestry apparently asserts that, because it requested future service on counsel, service on Johnson

Forestry was not proper, thereby excusing the statutory appeal procedure. Although this court has never addressed whether service directly on a violator, rather than a violator's attorney, is proper, *Grasser v. Blakkolb*, 12 Wn. App. 529, 530, 530 P.2d 684, *review denied*, 85 Wn.2d 1005 (1975), provides sufficient legal guidance.

¶18 In *Grasser*, an administrator of an estate rejected a creditor's claim and sent the rejection directly to the claimant rather than claimant's counsel. *Grasser*, 12 Wn. App. at 530. The administrator sent the claim in compliance with RCW 11.40.030, which required that a rejection notice be sent by personal service or registered mail. The mail was returned, undelivered. *Grasser*, 12 Wn. App. at 530-31. The *Grasser* court found that "[t]he notice provision is for the protection of the claimant. . . . [A]n administrator is not required to serve claimant's attorney." *Grasser*, 12 Wn. App. at 531. Furthermore, the general rule is that "when a statute requires notice be served upon a person for the purpose of creating liabilities or determining rights, personal service is intended, unless some other mode of service is expressly authorized." *Grasser*, 12 Wn. App. at 531 (quoting *Robel v. Highline Pub. Sch. Dist. No. 401*, 65 Wn.2d 477, 482, 398 P.2d 1 (1965)).

¶19 Here, RCW 76.09.170 expressly requires DNR to serve notice of civil penalties by certified mail to "the person incurring . . . the violation." RCW 76.09.170(3). The statute does not provide for an alternative mode of service. DNR complied with the express requirements of the statute when it sent notice of the civil penalty via certified mail to Johnson Forestry. Under the statute, DNR was not required to serve Johnson Forestry's counsel. Furthermore, the evidence shows that Johnson received the certified letter, signed for it himself, and verbally indicated to a DNR employee that he would forward the penalty notice to his counsel.

¶20 WAC 223-08-055, on which Johnson Forestry relies, allows counsel to represent a party before the Board. But, WAC 223-08-055 expressly applies only to the Board. WAC

223-08-001. Further, under WAC 223-08-055, when counsel files a notice of appearance, "all future notices and orders shall be served by the *appeals board* upon such representative." WAC 223-08-055(2) (emphasis added). The purpose of the regulation "is to provide comprehensive rules of practice and procedure before the *forest practices appeals board*." WAC 223-08-001(1) (emphasis added). Chapter 223-08 WAC applies to "procedural matters before the *appeals board*." WAC 223-08-001(2) (emphasis added).

¶21 While Johnson Forestry did request future service on counsel, its request was served on DNR, not the Board. The requirements of WAC 223-08-055, which apply only to the Board, do not apply to Johnson Forestry's request. DNR was under no obligation to serve Johnson Forestry's counsel under WAC 223-08-055. Moreover, the request for service on the attorney was in a separate administrative proceeding. Thus, DNR properly served notice of the civil penalty on Johnson under the service requirements of RCW 76.09.170(3).

### III. DNR Authority to Issue the Civil Penalty

¶22 Johnson Forestry next contends that the Board erred when it granted summary judgment to DNR. Specifically, Johnson Forestry argues that under (a) rules of statutory construction and (b) its due process rights guaranteed by the United States Constitution, DNR did not have the authority to issue the civil penalty.

### A. *Statutory Construction*

¶23 Johnson Forestry argues that under RCW 76.09.170, a civil penalty is appropriate only after the Board releases a final order on any pending NTCs under RCW 76.09.090. This argument confuses the procedures for two independent enforcement mechanisms. DNR may issue a civil penalty, an NTC, or both, if appropriate, and a civil penalty is not conditioned on the finality of an NTC.

¶24 Statutory construction is a question of law that we review de novo. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994); *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996). " '[T]he fundamental object of statutory interpretation is to ascertain and give effect to the intent of the legislature which is done by first look[ing] to the plain meaning of words used in a statute.' " *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 552, 988 P.2d 961 (1999) (alterations in original) (quoting *State v. Sweet*, 138 Wn.2d 466, 477-78, 980 P.2d 1223 (1999)).

¶25 "When words in a statute are plain and unambiguous, statutory construction is not necessary, and [the] court must apply the statute as written unless the statute evidences an intent to the contrary." *Enter. Leasing*, 139 Wn.2d at 552. " '[T]he court should assume that the legislature means exactly what it says. Plain words do not require construction'." *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999) (quoting *State v. McCraw*, 127 Wn. 2d 281, 288, 898 P.2d 838 (1995)).

¶26 The Forest Practices Act of 1974 is a statewide system of laws designed to manage and protect the State's natural resources and to ensure a viable commercial timber industry. RCW 76.09.010(1); *Nw. Ecosystem Alliance v. Dep't of Ecology*, 104 Wn. App. 901, 907, 17 P.3d 697 (2001), *rev'd in part on other grounds sub nom. Nw. Ecosystem Alliance v. Forest Practices Bd.*, 149 Wn.2d 67, 66 P.3d 614 (2003). Accordingly, forest operators and land owners are required to submit forest practices applications and comply with the terms of the applications. *See* RCW 76.09.060; WAC 222-20-060. The legislature specifically granted DNR the authority to issue (1) notices to comply and/or (2) civil penalties when a forest operator or land owner violates the Forest Practices Act of 1974. RCW 76.09.090, .170.

¶27 Under RCW 76.09.090, "[i]f a violation, a deviation, material damage or potential for material damage to a public resource has occurred, . . . then the department shall issue and serve upon the operator or land owner a notice."

The Forest Practices Act of 1974 provides specific processes for a violator to contest an NTC. Within 15 days of receiving an NTC, a violator may request a hearing in front of DNR. RCW 76.09.090(3). Within 10 days of such hearing, DNR is required to issue a final order "either withdrawing its notice to comply or clearly setting forth the specific course of action to be followed by such operator." RCW 76.09.090(3). Once DNR issues a final order on the NTC, a violator has 30 days to appeal the order to the Board. RCW 76.09.090(3).

¶28 Additionally, the legislature granted DNR authority to issue civil penalties under a separate section of the Forest Practices Act of 1974. Under RCW 76.09.170, "[e]very person who violates any provision of RCW 76.09.010 through 76.09.280 . . . shall be subject to a penalty in an amount of not more than ten thousand dollars for every such violation." RCW 76.09.170(1). The person incurring a penalty may apply in writing to DNR within 15 days for remission or mitigation of the penalty. RCW 76.09.170(3). The person incurring a penalty may also appeal the penalty to the Board within 30 days of receiving notice of the penalty. RCW 76.09.170(4). If a violator fails to apply for remission or mitigation to DNR and fails to appeal to the Board within the statutory timeframe, the penalty becomes "due and payable thirty days after receipt of notice." RCW 76.09.170(5).

¶29 The plain language of the Forest Practices Act of 1974 grants DNR separate authority to issue both NTCs and civil penalties. RCW 76.09.170 does not refer to the issuance of NTCs under RCW 76.09.090. Moreover, the legislature amended the section in 1993, deleting a reference to RCW 76.09.090.[7] Former RCW 76.09.170 (1975). The deletion indicates legislative intent to keep the two enforcement mechanisms separate. Likewise, RCW 76.09.090 does not reference civil penalties. If the legislature intended the

---

[7] The third sentence of former RCW 76.09.170(1) (1975) used to read: "In case of a failure to comply with a notice pursuant to RCW 76.09.090 as now or hereafter amended or a stop work order. . . . " The third sentence now reads: "In case of a failure to comply with a stop work order." RCW 76.09.170(1).

issuance of civil penalties to depend on the issuance of NTCs, the legislature would have maintained the reference to RCW 76.09.090 within the statutory language of RCW 76.09.170.

¶30 Here, under RCW 76.09.170, Johnson Forestry could have (a) filed for remission or mitigation of the civil penalty within 15 days of October 31, 2001 or (b) filed an appeal within 30 days of October 31, 2001. Johnson Forestry failed to do either within the statutory time frame. Thus, the appeal filed on April 24, 2002, was not permissible under RCW 76.09.170.

## B. *Due Process Rights*

¶31 Johnson Forestry also contends that service of the civil penalty was a violation of procedural due process rights. Specifically, Johnson Forestry argues that "[i]t seems unfair to impose penalties before a violation has been found." Br. of Appellant at 8. Nevertheless, Johnson Forestry does not provide any legal or factual precedent for this argument.[8] This court will not consider arguments for which a party has not cited legal authority. *In re Marriage of Wallace*, 111 Wn. App. 697, 705, 45 P.3d 1131 (2002), *review denied*, 148 Wn.2d 1011 (2003). *See also* RAP 10.3(a)(5); *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990). " '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " *In re Pers. Restraint of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (quoting *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970), *cert. denied*, 401 U.S. 917 (1971)). *See also In re Disciplinary Proceeding Against Schafer*, 149 Wn.2d 148, 168, 66 P.3d 1036 (2003).

¶32 Even if this court reached the substance of this argument, Johnson Forestry's position would fail. RCW 76.09.170 provided Johnson Forestry with a process to

---

[8] Johnson Forestry cites only general procedural due process propositions such as: "Fairness is the hallmark of constitutional due process," and, "[b]roadly speaking, the purpose of due process of law is to protect individuals against arbitrary acts on the part of the State." Br. of Appellant. at 8.

appeal the penalty notwithstanding the pending NTCs. Johnson Forestry could have legally applied to DNR for remission or mitigation of the civil penalty or appealed to the Board. RCW 76.09.170 (3), (4). When Johnson Forestry neglected to file a timely appeal, the Board properly concluded that "the civil penalty itself can become a 'final order' that a violation has occurred." AR at 54.

¶33 Here, DNR provided Johnson Forestry with notice of the civil penalty via certified mail, as allowed under RCW 79.09.170(3). Johnson Forestry had actual notice of the civil penalty. Nevertheless, neither Johnson Forestry nor counsel timely appealed the civil penalty under RCW 76.09.170(4)-(6). Accordingly, Johnson Forestry's assertions that issuance of the civil penalty violated due process are without merit.

¶34 We note that in this case, there is no contest that a violation occurred—i.e., Johnson admitted to sufficient facts to justify violations of the Forestry Practices Act of 1974, and Johnson did not challenge the portion of the Board's decision affirming the NTCs in his appeal to superior court. Therefore, we do not address whether DNR may impose a civil penalty without finding a violation or having one admitted.

IV. Board Jurisdiction to Hear Appeal

¶35 Finally, Johnson Forestry contends that it appealed the civil penalty in a "timely manner" after DNR's final order confirming the NTCs, and, therefore, the Board had jurisdiction to hear the appeal under implied statutory authority. Br. of Appellant at 16. This argument fails.

¶36 The Board, as part of an administrative agency, has only those powers either expressly granted or necessarily implied by the legislature. *Snohomish County v. State*, 69 Wn. App. 655, 663, 850 P.2d 546 (1993), *review denied*, 123 Wn.2d 1003 (1994). The Forest Practices Act of 1974 expressly grants the Board exclusive jurisdiction to hear appeals of any DNR order. RCW 76.09.220(7); *Snohomish*

*County*, 69 Wn. App. at 661. Specifically, the Board has express jurisdiction to hear appeals challenging civil penalties DNR issued when violators file the appeal(s) within 30 days of receipt of notice of the penalty. RCW 76.09.170(4). *See also Snohomish County Fire Prot. Dist. No. 1 v. Wash. State Boundary Review Bd. for Snohomish County*, 121 Wn. App. 73, 82, 87 P.3d 1187 (2004) (holding that compliance with the statutory filing deadline is a jurisdictional prerequisite), *aff'd*, 155 Wn.2d 70, 117 P.3d 348 (2005); *Graham Thrift Group, Inc. v. Pierce County*, 75 Wn. App. 263, 267-68, 877 P.2d 228 (1994) (holding that a 10-day mandatory filing period for administrative appeal acts as jurisdictional bar).

■ ¶37 Here, DNR issued the civil penalty on October 25, 2001. Johnson Forestry did not appeal the civil penalty within the next 30 days. Rather, Johnson Forestry included an appeal of the civil penalty in its appeal of DNR's final order affirming the NTCs on April 24, 2002. Therefore, because Johnson Forestry did not appeal within the statutory time frame, the Board had no express jurisdiction over the untimely appeal.

■ ¶38 Although Johnson Forestry argues that the Board has implied authority to "assume jurisdiction to make sure that the statutes involving penalties are considered fairly and in light of the intent of the Legislature," Johnson Forestry provides no legal authority to support this proposition.[9] Br. of Appellant at 16. Rather, Johnson Forestry simply states that "[i]t would be logical to assume that the [Board] had implied authority to assume jurisdiction to make sure that the statutes involving penalties are considered fairly and in light of the intent of the Legislature." Br. of Appellant at 16. We will not consider arguments for which a party has not cited legal authority. *Wallace*, 111 Wn. App. at 705. *See also* RAP 10.3(a)(5);

_____

[9] Johnson Forestry cites to *Boise Cascade Corp. v. Washington Toxics Coalition*, 68 Wn. App. 447, 843 P.2d 1092, *review denied*, 121 Wn.2d 1017 (1993), stating only that "appeal [j]udges have such authority as is necessarily implied as incident to their express statutory authority." Br. of Appellant at 16.

*Dennison*, 115 Wn.2d at 629. Therefore, Johnson Forestry has failed to demonstrate that the Board has implied authority to assume jurisdiction over the untimely appeal. Thus, the Board properly dismissed Johnson Forestry's appeal of the civil penalty for lack of jurisdiction.

¶39 Affirmed.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

Review denied at 158 Wn.2d 1002 (2006).