144 P.3d 385 (2006)
ALPINE LAKES PROTECTION SOCIETY, Friends of the Loomis Forest, Kettle Range Conservation Group, The Mountaineers, Northwest Ecosystem Alliance, Peninsula Neighborhood Association, Seattle Audubon Society, Washington Environmental Council, Washington Wilderness Coalition, and Whidbey Environmental Action Network, Appellants,
v.
WASHINGTON STATE FOREST PRACTICES BOARD, Washington Forest Protection Association, Washington State Department of Ecology, and Washington State Department of Natural Resources, Respondents.
Alpine Lakes Protection Society, Friends of the Loomis Forest, Kettle Range Conservation Group, The Mountaineers, Northwest Ecosystem Alliance, Peninsula Neighborhood Association, Seattle Audubon Society, Washington Environmental Council, Washington Wilderness Coalition, and Whidbey Environmental Action Network, Appellants,
v.
Washington State Forest Practices Board, Respondents.
Nos. 32047-9-II, 33676-6-II.
Court of Appeals of Washington, Division Two.
October 10, 2006.
*386 Peter Robert Goldman, Attorney at Law, Toby Thaler, Attorney at Law, Paul August Kampmeier, Seattle, WA, for Appellants.
Colleen G. Warren, Attorney General's Office, Cheryl Ann Nielson, Attorney at Law, Atty. Gen. Ofc. Nat. Res. Div., Olympia, WA, John William Hempelmann, Cairncross & Hempelmann PS, Richard L. Settle, Foster Pepper PLLC, John Patrick Payseno, Attorney at Law, Seattle, WA, for Respondents.
*387 HUNT, J.
¶ 1 Alpine Lakes Protection Society and several other conservation organizations (collectively, "ALPS") appeal two administrative actions, one by the Washington Department of Ecology (Ecology) and the other by the Washington Forest Practices Board (Forest Practices Board). We have linked these two appeals.
¶ 2 In the first case, ALPS appeals Ecology's rulemaking amendment of WAC 197-11-800.[1] This amendment (1) removed Classes I, II, and III forest practices permits from its list of government actions that are categorically exempt from the State Environmental Policy Act (SEPA)[2]; and (2) thereby caused Classes I, II, and III forest practices permits to be no longer subject to Ecology's "Rule 305," WAC 197-11-305(b)(ii).[3] ALPS argues that (1) Ecology was not required to amend WAC 197-11-800 in this manner because SEPA independently authorizes Ecology to apply Rule 305-type "cumulative effects"[4] scrutiny to forest practices permits; *388 and (2) therefore, Ecology's amendment of WAC 197-11-800 improperly excluded Classes I, II, and III forest practices from SEPA review of cumulative effects that a forest-practices permit application might create when considered together with other related, though segmented, forest practices permits.
¶ 3 In the second case, ALPS appeals the Forest Practices Board's denial of its petition for rulemaking: ALPS petitioned the Board to promulgate a "catch-all" provision in its Class IV forest practices classification,[5] to operate like Ecology's Rule 305, which would subject otherwise exempt, related, segmented proposals to SEPA review for potential, cumulative environmental impacts. ALPS argues that the Forest Practices Board has a statutory duty to promulgate such a provision and that the Board acted outside its statutory authority in failing to do so.
¶ 4 We hold that (1) Ecology did not act improperly in amending WAC 197-11-800 and (2) the Forest Practices Board did not act improperly in denying ALPS' petition to add a "Rule 305-like" "catch all" provision to its Class IV forest practices classification. We affirm.

FACTS

I. BACKGROUND

A. Plum Creek's Forest Practices Permit
¶ 5 Plum Creek Timber Company (Plum Creek) owns several thousand acres of land in King and Pierce Counties. Between 1994 and 2001, Plum Creek obtained 25 Department of Natural Resources (DNR) forest practices permits for timber harvest and three permits for road construction in the Carbon River Valley and its surrounding hillside near Mount Rainier National Park. DNR determined that all of these permits were for Class III forest practices,[6] which were thereby exempt from environmental review under Washington's State Environmental Policy Act (SEPA).
¶ 6 At issue here is a Class III forest practices permit encompassing a 28-acre piece of Plum Creek land called "Doggone Harvest." In response to environmental concerns raised by the Mountaineers and two individuals (collectively, the "Mountaineers"), Plum Creek voluntarily revised its permit application to incorporate aesthetic changes. DNR approved Plum Creek's application and granted a Class III forest practices permit.

B. Ecology's Rule Making
¶ 7 Effective September 1, 2003, Ecology amended WAC 197-11-800 to remove Classes I, II, and III forest practices permits from its list of SEPA-exempt government actions. This amendment caused these three classes of forest practices permits no longer to be subject to Ecology's Rule 305, which otherwise could have required SEPA review of "a segment of a proposal" that includes "a series of exempt actions that are physically or functionally related to each other, and that together may have a probable significant adverse environmental impact." WAC 197-11-305(b)(ii).

C. ALPS' Petition for Forest Practices Board Rule Making
¶ 8 On February 13, 2003, ALPS petitioned the Forest Practices Board to amend its forest practices classification system to ensure SEPA review of related, though segmented,[7] forest-practices applications with potentially substantial, cumulative, environmental effects.[8] More specifically, ALPS petitioned the Forest Practices Board to promulgate a "catch-all" provision in its Class IV forest practices classification that would operate like Ecology's Rule 305. ALPS argued that the Forest Practices Board has a statutory duty under SEPA and the Forest Practices Act to adopt forest practice rules that function similarly to Ecology's Rule 305 (WAC 197-11-305).
*389 ¶ 9 The Forest Practices Board received written and oral comments on ALPS' rule-making petition. On March 19, 2003, the Forest Practices Board unanimously denied ALPS' petition. By letter, dated April 10, 2003, the Forest Practices Board summarized its ruling, which included the following rationale:
A. Contrary to the petition, the Board has no statutory or other legal "duty" to engage in rule making to adopt a rule similar to or that operates like the "305 Rule" described in the petition.
. . . .
E. As directed by the legislature, the Board has established a short, specific "closed list" of forest practices classed as IV-Special, and thus subject to SEPA analysis on an individual basis. Petitioner's desire for a "catch-all" or openended rule would not be consistent with legislative direction.
Forest Practices Board Admin. Record (FPBAR) at 4949.

II. APPEALS

A. Administrative

1. Forest Practices Appeals Board
¶ 10 The Mountaineers appealed the Doggone Harvest Class III forest practices permit to the Forest Practices Appeals Board (Appeals Board).[9] The Appeals Board conducted hearings to consider whether the Doggone Harvest permit was a "segment of a proposal" triggering SEPA review under WAC 197-11-305 (Rule 305). In its March 21, 2002 written decision, the Appeals Board first determined that the forest practices exemption under SEPA, WAC 197-11-800(25)(a) (2003), was potentially subject to SEPA review through WAC 197-11-305. If applicable, Ecology's administrative Rule 305 would function as an exception to the general rule that categorically exempt activities are not subject to SEPA review.[10]
¶ 11 The Appeals Board next determined, however, that Plum Creek's Doggone Harvest permit was not operationally linked to past, present, or future forest practices and, therefore, Rule 305 would not apply. The Appeals Board denied the Mountaineers' appeal and affirmed the Doggone Harvest Class III forest practices permit.

2. Department of Ecology
¶ 12 In response to the Appeals Board's ruling, Plum Creek sought judicial review of WAC 197-11-305 and WAC 197-11-800. Plum Creek argued that Ecology had acted beyond the scope of its legislatively-granted power when it adopted these two rules. Agreeing with Plum Creek, on August 1, 2003, Ecology settled the case by removing forest practices permits from its list of government actions exempt from SEPA review under WAC 197-11-800.

B. Thurston County Superior Court

1. Ecology's amendment of WAC 197-11-800
¶ 13 On August 23, 2003, ALPS sought judicial review of Ecology's rule-making amendment of WAC 197-11-800, which removed Class I, II, and III forest practices from its list of SEPA-exempt actions. ALPS argued that Ecology's rule-making (1) was arbitrary and capricious because Ecology misinterpreted SEPA and the amendment conflicted with case law; and (2) violated SEPA because this amendment would lead to significant adverse environmental impacts, thus requiring an environmental impact statement, which was not conducted here.
¶ 14 On July 23, 2004, the superior court dismissed ALPS' petition for judicial review. The court ruled that (1) the Forest Practices Board has sole authority to decide which forest practices are subject to SEPA review; (2) Ecology lacks authority to include Class I, II, and III forest practices permits under WAC 197-11-800 because these forest practices are statutorily exempt from SEPA under *390 RCW 43.21C and, therefore, not subject to WAC 197-11-305; and (3) Ecology's amendment of WAC 197-11-800, to remove these three classes of forest practices, did not require an environmental impact statement because Ecology was merely making its rules consistent with SEPA.

2. Forest Practices Board's denial of ALPS' request for rule-making
¶ 15 ALPS also filed a petition for judicial review, under the Administrative Procedures Act (APA),[11] of the Forest Practices Board's denial of ALPS' petition for rule-making. In this petition, ALPS asked the Forest Practices Board to promulgate forest practice rules that would function similarly to Rule 305's provision for SEPA review of categorically exempt segmented, but related, proposals that might negatively impact the environment when considered together. See WAC 197-11-305(1).
¶ 16 The superior court issued a memorandum opinion denying ALPS' petition. The court ruled that (1) Rule 305 does not apply to Class I, II, and III forest practices; and (2) the Forest Practices Board's denial of ALPS' rule-making petition was not arbitrary and capricious.

C. Court of Appeals
¶ 17 ALPS appealed both actions, asking us (1) to declare a Class IVspecial "catchall" provision consistent with the Legislature's direction to the Forest Practices Board, and (2) to hold that the Forest Practices Board must amend the Class IVSpecial list to ensure SEPA review for segmented forest practices having potentially substantial cumulative effects. We linked these two appeals for oral argument and decision.

ANALYSIS

I. BACKGROUND

A. State Environmental Policy Act
¶ 18 SEPA, Chapter 43.21C RCW, requires government agencies to evaluate their actions' impact on the environment. RCW 43.21C.010 through .031. If a major action will probably have a significant adverse impact on the environment, SEPA requires government agencies to prepare an environmental impact statement (EIS) describing adverse impacts, alternative actions, and other pertinent matters. RCW 43.21C.030 and .031; Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997). Not all actions, however, require an EIS.
¶ 19 SEPA lists several government actions that are exempt from environmental review.[12] But this list is not exhaustive. The Legislature directed Ecology to determine other categories of government actions that do not substantially affect the environment. If a proposed action is on Ecology's non-environment-affecting list, an EIS is not generally required. See RCW 43.21C.031,[13] .110; see also Dioxin, 131 Wash.2d at 365, 932 P.2d 158.
¶ 20 SEPA also requires Ecology to promulgate a rule-based exception to otherwise SEPA-exempt government actions. RCW 43.21C.110(1)(a). In response to this legislative directive, Ecology promulgated two administrative rules, only one of which is at issue here, WAC 197-11-305.[14] This rule, *391 also called "Rule 305," serves as an exception to Ecology's list of government actions that are otherwise exempt under WAC 197-11-800.[15]Snohomish County v. State, 69 Wash. App. 655, 668, 850 P.2d 546 (1993), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994).
¶ 21 These linked appeals address the scope of Ecology's authority under RCW 43.21C.110(1): First, does RCW 43.21C.110(1) allow Ecology to apply its "cumulative effects" Rule 305 to both administrative and statutory SEPA exemptions. Second, is the forest practices exemption, RCW 43.21C.037, subject to Ecology's administrative rules promulgated under RCW 43.21C.110(1)(a)? These are issues of first impression.

B. Forest Practices Act
¶ 22 "The Forest Practices Act is a statewide system of laws designed to manage and protect the State's natural resources and to ensure a viable commercial timber industry." Johnson Forestry Contracting, Inc. v. Dep't of Natural Res., 131 Wash.App. 13, 23, 126 P.3d 45 (2005); see also RCW 76.09.010(1). Forest practices are "any activity conducted on or directly pertaining to forest land and relating to growing, harvesting, or processing timber." RCW 76.09.020(11). The Forest Practices Board is responsible for adopting all forest practice rules,[16] which DNR then enforces and administers. RCW 76.09.040(1).
¶ 23 The Legislature created four classes of forest practices based on their potential for damaging public resources. RCW 76.09.050. Class I forest practices "have no direct potential for damaging a public resource." Id. Class II forest practices "have a less than ordinary potential for damaging a public resource." Id. Class III forest practices are practices "other than those contained in Class I, II, or IV." Id. Class IV forest practices "have a potential for a substantial impact on the environment" and require DNR to evaluate whether an EIS must be prepared under SEPA. Id. In contrast, Classes I through III "are exempt from the requirements for preparation of a detailed statement under [SEPA]." Id.
¶ 24 Exercising its Forest Practices Act authority, the Forest Practices Board has promulgated rules establishing what forest practices comprise each class. See WAC 222-16-050. The Board has also created a closed list[17] of specific forest practices, entitled "Class IVspecial," which automatically require SEPA review. WAC 222-16-050(1).[18]

II. STANDARD OF REVIEW

A. Administrative Procedures Act
¶ 25 In reviewing an administrative action, we sit in the same position as the trial court and apply the APA standards directly to the agency's administrative record.[19] Under *392 the APA, the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).
¶ 26 RCW 34.05.570 sets forth nine grounds on which a party may challenge an agency's actions,[20] two of which pertain here. First, RCW 34.05.570(2)(c), applicable to Ecology actions, provides in pertinent part: "In a proceeding involving review of a rule, the court shall declare the rule invalid only if it finds that . . . the rule exceeds the statutory authority of the agency . . . or the rule is arbitrary and capricious." Second, RCW 34.05.570(4) (other agency action), applicable to rule-making petitions to the Forest Practices Board, provides for (1) a challenge to "an agency's failure to perform a duty required by law," RCW 34.05.570(4)(b), that violates a party's rights; and (2) relief only if the agency's action was "[a]rbitrary or capricious" or "[o]utside the statutory authority of the agency or the authority conferred by a provision of law." RCW 34.05.570(4)(c)(ii), (4)(c)(iii).
¶ 27 Like the trial court, we review such "questions of law de novo, but we accord substantial weight to the agency's interpretation of the statutes it administers." Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 296, 49 P.3d 135 (2002), review denied, 149 Wash.2d 1003, 70 P.3d 964 (2003).

B. Statutory Construction
¶ 28 When interpreting statutes, a court's primary objectives are to ascertain and to carry out the Legislature's intent and purpose. Courts must look first to the statute's language. If the statute is unambiguous, its meaning derives from the plain language of the statute alone. See Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 242, 59 P.3d 655 (2002), cert. denied, 538 U.S. 1057, 123 S.Ct. 2221, 155 L.Ed.2d 1107 (2003).
¶ 29 Courts must also construe a legislative act as a whole. Whenever possible, a court should harmonize the provisions of an act to insure its proper construction. Nisqually Delta Ass'n v. City of DuPont, 103 Wash.2d 720, 730, 696 P.2d 1222 (1985).

III. ECOLOGY'S RULE-MAKING AUTHORITY

A. Scope of RCW 43.21C.110Exceptions to Categorical Exemptions
¶ 30 ALPS argues that RCW 43.21C.110(1)(a) authorizes Ecology to create and to apply a cumulative-effects exception rule, WAC 197-11-305, to both administrative and statutory SEPA exemptions because the statute does not distinguish between them. We disagree.

1. Ecology's administratively-created, categorical, SEPA-review exemptions

¶ 31 RCW 43.21C.110(1) provides in pertinent part:
It shall be the duty and function of the department of ecology:
(1) To adopt and amend thereafter rules of interpretation and implementation of this chapter, subject to the requirements of chapter 34.05 RCW, for the purpose of providing uniform rules and guidelines to all branches of government including state agencies, political subdivisions, public and municipal corporations, and counties. The proposed rules shall be subject to full public hearings requirements . . . and the department shall have the authority and responsibility for full and appropriate independent promulgation and adoption of rules, assuring consistency with this chapter as amended and with the preservation of protections afforded by this chapter. The rule-making powers authorized in this section shall include, but shall not be limited to, the following phases of interpretation and implementation of this chapter:
(a) Categories of governmental actions which are not to be considered as potential major actions significantly affecting the *393 quality of the environment, including categories pertaining to applications for water right permits pursuant to chapters 90.03 and 90.44 RCW. The types of actions included as categorical exemptions in the rules shall be limited to those types which are not major actions significantly affecting the quality of the environment. The rules shall provide for certain circumstances where actions which potentially are categorically exempt require environmental review. An action that is categorically exempt under the rules adopted by the department may not be conditioned or denied under this chapter.
RCW 43.21C.110(1) (emphasis added). The plain language of this statute directs Ecology: (1) to develop its own list of government-action categories that are not major actions affecting the quality of the environment ("administratively-created" categorical exemptions), and (2) to create a rule-based exception that governs when a proposal potentially falling under an otherwise exempt government-action category may nonetheless require environmental review. Id.

2. Statutorily-created, categorical, SEPA-review exemptions

¶ 32 In contrast, no language in RCW 43.21C.110(1)(a) mentions a similar exception to any legislatively-created statutory categorical exemption. Rather, the RCW 43.21C.110(1)(a) exception expressly refers only to categorical exemptions specified by Ecology. Read as a whole, RCW 43.21C.110(1)(a) not only recognizes administrative categorical exemptions, but it also limits Ecology's promulgation of its exception rule to Ecology-designated (and, therefore, administrative) categorical exemptions. Nisqually Delta Ass'n, 103 Wash.2d at 730, 696 P.2d 1222. Moreover, RCW 43.21C.229(2), supra, expressly references Ecology's adoption, under RCW 43.21C.110(1)(a), of exceptions to the use of Ecology-adopted categorical exemptions, again, with no reference to statutory categorical exemptions.
¶ 33 Thus, by negative inference, this RCW 43.21C.110(1)(a) limitation precludes application of Ecology's exception rule to statutory categorical exemptions.

3. SEPA's infill-development exemptionRCW 43.21C.229

¶ 34 Citing SEPA's infill-development exemption under RCW 43.21C.229, ALPS argues that the Legislature intended RCW 43.21C.110(1)(a) to apply to both statutorily and administratively created categorical exemptions. Again, we disagree.
¶ 35 Similar to the way in which RCW 43.21C.110(1)(a) directs Ecology to create (administrative) categorical SEPA exemptions, RCW 43.21C.229 directs cities and counties to create their own lists of government actions that are categorically exempt from SEPA review, even if they differ from Ecology's categorical exemptions:
In order to accommodate infill development and thereby realize the goals and policies of comprehensive plans adopted according to chapter 36.70A RCW, a city or county planning under RCW 36.70A.040 is authorized by this section to establish categorical exemptions from the requirements of this chapter. An exemption adopted under this section applies even if it differs from the categorical exemptions adopted by rule of the department [of ecology] under RCW 43.21C.110(1)(a). An exemption may be adopted by a city or county under this section if it meets the following criteria. . . .
RCW 43.21C.229(1) (Emphasis added).
¶ 36 Nonetheless, as it did with Ecology, the Legislature similarly limited cities' and counties' exemption-creating authority by making city- and county-created exemptions subject to Ecology's RCW 43.21C.110(1)(a)'s exception rule:
Any categorical exemption adopted by a city or county under this section shall be subject to the rules of the department [of ecology] adopted according to RCW 43.21C.110(1)(a) that provide exceptions to the use of categorical exemptions adopted by the department.
RCW 43.21C.229(2)[21] (Emphases added). Consistent with the plain language of RCW *394 43.21C.110(1)(a), supra, the plain language of RCW 43.21C.229 recognizes that Ecology's exceptions, adopted following RCW 43.21C.110(1)(a)'s directive, are limited to Ecology's SEPA-exemption categories,[22] unless otherwise specified by statute. See e.g., RCW 43.21C.0384(1)(c) (personal wireless services facilities). Similarly specifying otherwise by statute, RCW 43.21C.229 expressly subjects city and county exemptions to Ecology's RCW 43.21.C.110(1)(a)-adopted exceptions.

4. WAC 197-11-305inapplicable to statutory exemptions

¶ 37 ALPS further contends that: (1) RCW 43.21C.110(1)(a) specifically provides Ecology's rule-making powers are not limited to those powers this statute outlines; and (2) thus, Ecology had power to apply WAC 197-11-305 to statutory exemptions, independent of subsection (a) of RCW 43.21C.110(1).[23] This argument also fails.
¶ 38 Although Ecology may have broad rule-making authority, it cannot implement a rule that conflicts with a clear statutory provision. See Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 19, 43 P.3d 4 (2002) (an agency cannot amend or change a statute through administrative rule-making). See also King County Water Dist. No. 68 v. Tax Comm., 58 Wash.2d 282, 286, 362 P.2d 244 (1961) (specific term modifies or restricts general terms).[24] Nor can an agency act outside its legislatively-delegated authority. And, as we have previously explained, Ecology had legislatively-delegated power under RCW 43.21C.110(1)(a) only to promulgate exceptions for its otherwise administratively exempt categories.
¶ 39 Accordingly, we hold that (1) RCW 43.21C.110(1)(a) authorizes Ecology to create a cumulative-effects exception for only those categorical exemptions that Ecology administratively determines meet the standard set forth under this statute; and (2) RCW 43.21C.110 does not authorize Ecology *395 to apply Rule 305 to statutory exemptions. Absent legislative authorization, Ecology cannot act in the manner that ALPS urges.

B. RCW 43.21C.037 (Forest Practices Exemption)
¶ 40 ALPS next argues that: (1) the forest practices exemption, RCW 43.21C.037, is a hybrid, (administrative-statutory) exemption, subject to Ecology's authority under RCW 43.21C.110(1)(a); (2) the Forest Practices Board, not the statute, defines which actions are SEPA exempt; and (3) Ecology has the authority and the duty to guide the Forest Practices Board in determining such administrative-statutory exemptions. Again, we disagree.
¶ 41 ALPS correctly notes that SEPA does not expressly list specific government actions that are categorically exempt from SEPA review. Instead, RCW 43.21C.037 merely refers to the Forest Practice Board, which has discretionary authority under RCW 76.09.050 to define forest practices classes I to IV.
¶ 42 But we need not decide whether RCW 43.21C.037 is a purely statutory exemption or a so-called "hybrid exemption." In either case, as we discuss above, RCW 43.21C.110(1)(a) is limited to Ecology's categorical exemptions listed under WAC 197-11-800. RCW 43.21C.110(1)(a) does not apply to exemptions listed under other SEPA provisions.
¶ 43 RCW 43.21C.037 provides:
(1) Decisions pertaining to applications for Class I, II, and III forest practices, as defined by rule of the forest practices board under RCW 76.09.050, are not subject to the requirements of RCW 43.21C.030(2)(c)[25] as now or hereafter amended.
. . .
(3) Those forest practices determined by rule of the forest practices board to have a potential for a substantial impact on the environment, and thus to be Class IV practices. . . .
RCW 43.21C.037 (emphasis added).
¶ 44 By its plain language, RCW 43.21C.037 grants the Forest Practices Board sole discretion to determine (1) which activities fall under which forest practices classification[26]; and (2) which actions may substantially impact the environment, under both SEPA and the Forest Practices Act,[27] regardless of Ecology's determination or rules under RCW 43.21C.110(1)(a).[28]
¶ 45 The Forest Practices Board alone (1) defines Class IV forest practices, which are subject to environmental review, and (2) decides whether a segmented Class III permit application, for example, should be considered and treated as a Class IV forest practice. If, as ALPS urges, we were to interpret RCW 43.21C.110(1)(a) as allowing Ecology to apply its cumulative-effects Rule 305 to forest practices, then essentially we would be (1) granting Ecology the right to define forest practices classifications and (2) judicially amending the Legislature's delegation to the Forest Practices Board the sole authority to classify forest practices. Such interpretation would not only be an improper judicial usurpation of legislative authority, but also it would be contrary to the Legislature's clear mandates in RCW 43.21C.037 and RCW 76.09.050. Instead, as we previously noted, it is our judicial duty to read the Legislature's statutes together, in harmony where possible, to carry out the Legislature's intent. See, e.g., Nisqually Delta Ass'n, 103 Wash.2d at 730, 696 P.2d 1222.
¶ 46 Thus, contrary to ALPS' contentions, we hold that Ecology has no authority to apply WAC 197-11-305 exceptions to forest practices permits under RCW 43.21C.037.[29]

*396 IV. FOREST PRACTICES BOARD'S RULE-MAKING DUTY
¶ 47 ALPS further argues that, when read together, SEPA and the Forest Practices Act create a mandatory duty for the Forest Practices Board to promulgate a Class IVSpecial "catch all" provision to ensure SEPA review for all forest practices with potentially significant cumulative effects. This argument also fails.
¶ 48 As quoted earlier, SEPA explicitly exempts Class I, II, and III forest practices from an EIS requirement. RCW 43.21C.037. The plain language of this exemption expressly contemplates the Forest Practices Board's defining, by rule-making, which forest practices are not subject to SEPA review.
¶ 49 The source of this contemplated rule-making authority is RCW 76.09.040(1) of the Forest Practices Act. RCW 76.09.040(1) requires the Forest Practices Board to adopt such rules as "necessary to accomplish the purposes and policies stated in RCW 76.09.010." As we note above, RCW 76.09.010's purposes and policies include both "a viable forest products industry" as well as "natural resource protection," including "forest soils, fisheries, wildlife, water quantity and quality, air quality, . . . and scenic beauty."
¶ 50 RCW 76.09.040(1) of the Forest Practices Act thus requires the Forest Practices Board to balance these considerations when it promulgates forest practice rules. In striking this balance, the Forest Practices Board must include within Class IV those forest practices that "have a potential for a substantial impact on the environment"[30] and, therefore, trigger DNR to evaluate whether SEPA requires an EIS. RCW 76.09.050(1). In WAC 222-16-050(1), the Forest Practices Board has struck this balance.
¶ 51 Consideration of potential cumulative effects is purely an Ecology rule (namely, "Rule 305"), applicable only to Ecology actions. In contrast, no rule or statute requires the Forest Practices Board to consider cumulative effects when it classifies forest practices.[31] Although the Forest Practices Board may, if it chooses, adopt a cumulative-effects rule of its own volition,[32] it has not yet so acted.
¶ 52 We reject ALPS' argument that the Forest Practices Board must promulgate a cumulative-effects rule.[33] That such a rule would be consistent with the Forest Practices Act does not mean that the Forest Practices Board has a statutory duty to promulgate such a rule. On the contrary, our research reveals no statute imposing such a duty.
¶ 53 Consistent with this conclusion is Snohomish County v. State, 69 Wash.App. 655, 665, 850 P.2d 546 (1993), review denied, 123 Wash.2d 1003, 868 P.2d 871 (1994), in which Division I of our court addressed whether SEPA generally applies to Class III forest practices. Division I held:
[T]he Legislature's exemption of class III forest practices from SEPA spares DNR . . . from individual case-by-case environmental review. The Legislature intended to prevent unnecessary paperwork, delays, and bureaucratic processing that would be a significant burden on government and taxpayers.
Id. at 669, 850 P.2d 546. The court reasoned:
For classes I, II, and III, the Legislature did not intend for DNR to comply with all *397 the procedural steps necessary to determine if an EIS is required. The contention of the County and [Washington Environmental Council] that SEPA applies to all forest practices applications is rejected. SEPA's EIS requirements do not apply to the first three classes of forest practices, unless by operation of WAC 197-11-305(1).

Id. (emphasis added).
¶ 54 Thus, under Snohomish County, unless Rule 305 applies, otherwise exempt forest practices (such as Class III forest practices) are not subject to SEPA environmental review. Because Ecology properly removed Classes I, II, and III forest practices from the Ecology rules to which Rule 305 applied, there is no longer a cumulative-effects exception rule applicable to these three classes of forest practices. Under the Snohomish County rationale, it is consistent with the Legislature's intent that SEPA-exempt forest practices, as enumerated in the Forest Practices Board's rules, are not subject to environmental review under SEPA.
¶ 55 Accordingly, we hold that the Forest Practices Board has no statutory, or other, duty to promulgate a "catch-all," "Rule 305 type" provision in its forest practices rules that would apply SEPA environmental review to otherwise exempt forest practices with potentially substantial cumulative effects. We further hold that, because the Forest Practices Board had no duty to promulgate a "305-type rule," the Board did not act arbitrarily and capriciously in denying ALPS' petition for rulemaking.[34]
¶ 56 Affirmed.
We concur: BRIDGEWATER, P.J., and ARMSTRONG, J.
NOTES
[1] WAC 197-11-800 provides, in pertinent part:

The proposed actions contained in Part Nine[*] are categorically exempt from threshold determination and EIS requirements, subject to the rules and limitations on categorical exemptions contained in WAC 197-11-305.
Note: The statutory exemptions contained in chapter 43.21C RCW are not included in Part Nine. Chapter 43.21C RCW should be reviewed in determining whether a proposed action not listed as categorically exempt in Part Nine is exempt by statute from threshold determination and EIS requirements.
* "Part Nine," "Categorical exemptions," referenced above, refers to the list of actions Ecology has exempted from SEPA review in WAC 197-11 sections 800 through 875. Sections 800(24) and 830 (WAC 197-11-830) focus on categorical exemptions for natural resources; neither of these sections, nor any other section in "Part Nine" or Chapter 43.21C RCW specifies Classes I through III forest practice permits as categorical exemptions.
[2] Chapter 43.21C RCW, "SEPA," provides in pertinent part:

It shall be the duty and function of the department of ecology:
(1) To adopt and amend thereafter rules of interpretation and implementation of this chapter, subject to the requirements of chapter 34.05 RCW, for the purpose of providing uniform rules and guidelines to all branches of government including state agencies, political subdivisions, public and municipal corporations, and counties. The proposed rules shall be subject to full public hearings requirements associated with rule promulgation. Suggestions for modifications of the proposed rules shall be considered on their merits, and the department shall have the authority and responsibility for full and appropriate independent promulgation and adoption of rules, assuring consistency with this chapter as amended and with the preservation of protections afforded by this chapter. The rule-making powers authorized in this section shall include, but shall not be limited to, the following phases of interpretation and implementation of this chapter:
(a) Categories of governmental actions which are not to be considered as potential major actions significantly affecting the quality of the environment, including categories pertaining to applications for water right permits pursuant to chapters 90.03 and 90.44 RCW. The types of actions included as categorical exemptions in the rules shall be limited to those types which are not major actions significantly affecting the quality of the environment. The rules shall provide for certain circumstances where actions which potentially are categorically exempt require environmental review. An action that is categorically exempt under the rules adopted by the department may not be conditioned or denied under this chapter.
[3] ALPS argues that if Ecology had not amended WAC 197-11-800 in this manner, Rule 305 would have subjected a series of otherwise exempt, related land-use proposals to SEPA review if, considered together, they "may have a probable significant adverse environmental impact."

The pertinent portion of WAC 197-11-305 provides:
(1) If a proposal fits within any of the provisions in Part Nine of these rules, the proposal shall be categorically exempt from threshold determination requirements (WAC 197-11-720) except as follows:
. . . .
(b) The proposal is a segment of a proposal that includes:
. . . .
(ii) A series of exempt actions that are physically or functionally related to each other, and that together may have a probable significant adverse environmental impact in the judgment of an agency with jurisdiction.. . . .
(Emphasis added.)
[4] The introduction to WAC 222-12-046 defines "cumulative effects" as follows:

The purpose of this section is to identify how the forest practices rules address changes to the environment caused by the interaction of natural ecosystem processes with the effects of two or more forest practices. This interaction is referred to as "cumulative effects."
[5] RCW 76.09.050(1)
[6] RCW 76.09.050(1); WAC 222-16-050(5).
[7] "Segmentation" occurs when project proponents divide their proposals into SEPA-exempt segments and, thus, avoid SEPA review of individual applications' environmental impacts. See WAC 197-11-305(1)(b).
[8] See note 4.
[9] The Appeals Board is the state agency that reviews forest practice decisions under the Forest Practices Act.
[10] Before Ecology's amendment to WAC 197-11-800, forest practices permits were included in Ecology's list of government actions exempt from SEPA review. See WAC 197-11-800(25)(a) (2003).
[11] Chapter 34.05 RCW.
[12] See, e.g., RCW 43.21C.038 (school closures). See also RCW 76.09.050(e), which exempts practices under Classes I, II, and III from the requirements of preparing a detailed SEPA statement.
[13] SEPA's description of "significant impacts," RCW 43.21C.031, provides, in pertinent part:

(1) Actions categorically exempt under RCW 43.21C.110(1)(a) do not require environmental review or the preparation of an environmental impact statement under this chapter. In a county, city, or town planning under RCW 36.70A.040, a planned action, as provided for in subsection (2) of this section, does not require a threshold determination or the preparation of an environmental impact statement under this chapter, but is subject to environmental review and mitigation as provided in this chapter.
(Emphasis added.)
[14] WAC 197-11-305(b) provides that "proposals" or "proposed actions" do not qualify for a categorical exception from SEPA if

[t]he proposal is a segment of a proposal that includes:
(i) A series of actions, physically or functionally related to each other, some of which are categorically exempt and some of which are not; or
(ii) A series of exempt actions that are physically or functionally related to each other, and that together may have a probable significant adverse environmental impact in the judgment of an agency with jurisdiction.
[15] The other rule, WAC 197-11-800, lists various government actions that Ecology determined would be exempt from SEPA requirements. This list includes such government actions as real property purchases, business licensing, and tax collection.
[16] To the extent that these forest practice rules relate to water quality, Ecology must also approve the rules before the Forest Practices Board adopts them. RCW 90.48.420, .425; RCW 76.09.040.
[17] A "closed" list, as used in this context, is a finite list of specific forest practices, with no room for interpretation, such that only the practices in the Class IV-special list automatically require an initial determination of SEPA compliance. See Webster's Dictionary definition of "closed": "3 a: rigidly excluding out influence . . . c: confined to a few: restricted to selective membership." WEBSTER'S THIRD INT'L DICTIONARY 427 (2002).
[18] The Forest Practices Board also created a "Class IVgeneral" list of circumstances in which DNR determines a lead agency responsible for deciding whether an EIS is required. WAC 222-16-050(2).
[19] Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 296, 49 P.3d 135 (2002) (citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993)), review denied, 149 Wash.2d 1003, 70 P.3d 964 (2003).
[20] Quadrant Corp. v. State Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 233, 110 P.3d 1132 (2005).
[21] We note that, consistent with RCW 43.21C.110(1)(a)'s plain meaning, RCW 43.21C.229(2) also characterizes RCW 43.21.C.110(1)(a) as the Legislature's directive to Ecology to create administrative categorical SEPA exemptions.
[22] To hold, as ALPS contends, that Ecology already had authority to apply its exception rule to any SEPA exemption, other than its own administratively adopted categorical exemptions, would render RCW 43.21C.229(2)'s reference to RCW 43.21C.110(1)(a) superfluous. Such interpretation would be contrary to the well-settled rule of statutory construction that no portion of a statute should be rendered superfluous. See City of Seattle v. Edwards, 87 Wash.App. 305, 309, 941 P.2d 697 (1997), overruled on other grounds State v. Miller, 156 Wash.2d 23, 123 P.3d 827 (2005).
[23] ALPS also notes that Ecology promulgated a cumulative effects rule in 1977, which applied to both statutory and administrative exemptions and was adopted before the Legislature authorized Ecology to develop its cumulative effects rule in 1983. Because the Legislature did not retract or restrict Ecology's cumulative effects rule in 1983, ALPS argues that the Legislature intended Ecology's cumulative effects rule to apply to both statutory and administrative exemptions. This argument is unpersuasive.

First, we do not look to legislative history if a statute is clear and unambiguous. State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005). Second, there were no judicial opinions on or before 1983 addressing whether Ecology's cumulative effects rule applies to statutory exemptions; and ALPS fails to show any other evidence that the Legislature was aware of ALPS' expanded scope of Ecology's cumulative effects rule. See Pringle v. State, 77 Wash.2d 569, 574, 464 P.2d 425 (1970). But even if we were to look to legislative history, it does not support ALPS' contention. Instead, the Legislature intended the 1983 SEPA amendments simply to preclude case by case review of categorically exempt activities; it did not intend to address the issues ALPS presents in this appeal. Dioxin, 131 Wash.2d at 363, 932 P.2d 158.
[24] In the SEPA background section of its opening brief, ALPS cites two Washington cases as holding that proposed actions subject to SEPA review cannot be segmented to avoid SEPA review: Loveless v. Yantis, 82 Wash.2d 754, 513 P.2d 1023 (1973) and Juanita Bay Valley Cmty. Ass'n v. Kirkland, 9 Wash.App. 59, 510 P.2d 1140, review denied, 83 Wash.2d 1002, 1973 WL 41925 (1973). Neither case, however, addresses forest practices or a specific SEPA statutory exemption. Therefore, these two cases do not apply to our analysis here.

ALPS also points to the National Environmental Policy Act (NEPA), to show that federal law requires NEPA review when there is future, intertwined, connected action. See Thomas v. Peterson, 753 F.2d 754, 759 (9th Cir.1985). But NEPA neither provides a cumulative-effects rule similar to RCW 43.21C.110 nor limits cumulative effects to administratively-created exemptions (as opposed to statutorily-created exemptions).
[25] RCW 43.21C.030(2)(c) details the requirements of an EIS for those "major actions significantly affecting the quality of the environment."
[26] RCW 43.21.C.037(1) and RCW 76.09.050(1)
[27] RCW 43.21C.037(3); RCW 76.090.050(1)(e).
[28] To hold otherwise would likely cause Ecology's authority under RCW 43.21C.110 to conflict with the Forest Practices Board's authority under RCW 43.21C.037 and RCW 76.09.050.
[29] It is irrelevant to our holding whether the forest practices classification is a statutory exemption or a hybrid administrative-statutory exemption.
[30] Both SEPA and the Forest Practices Act leave to the Forest Practices Board's sole discretion which forest practices meet the Class IV criteria. See RCW 43.21C.037; RCW 76.09.040(1), .050(1).
[31] See Analysis, Section III, supra.
[32] See Plum Creek Timber Co., L.P. v. Wash. State Forest Practices Appeals Bd., Forest Practices Board, 99 Wash.App. 579, 590-91, 993 P.2d 287 (2000), holding that, because the Forest Practices Board expressly adopted Ecology's SEPA rules by reference in WAC 222-16-050, the Board acted consistently with the Forest Practices Act in applying Ecology's Rule 305 to otherwise-SEPA exempt forest practices.
[33] In arguing that the Forest Practices Board must promulgate a cumulative effects rule, ALPS relies extensively on Plum Creek. Plum Creek, however, does not apply here because the Plum Creek court did not address whether Ecology had statutory authority to include exempt forest practices (Classes I-III) in its own rules. See section III of our Analysis, supra.
[34] Because ALPS has not prevailed on appeal, we deny its request for attorney fees.