[No. 16822-1-III. Division Three. February 4, 1999.]

GLENROSE COMMUNITY ASSOCIATION, *Respondent*, v. THE
CITY OF SPOKANE, ET AL., *Appellants*.

840

Stanley R. Schultz of Witherspoon, Kelley, Davenport & Toole, P.S.; Kelly A. Nolan; and James C. Sloane, City Attorney, and Patrick J. Dalton, Assistant, for appellants.

Stephen K. Eugster of Eugster, Haskell, for respondent.

SWEENEY, J. — This appeal involves a dispute between the City of Spokane and Glenrose Associates, both of which favor annexation of the Muirfield area of Glenrose Prairie, and Glenrose Community Association, which opposes annexation. The superior court concluded that because the City of Spokane did not have a comprehensive plan that covered the Muirfield area, the City, in considering its annexation, was required to comply with Spokane County's comprehensive plan for the area. It relied upon the Washington Growth Management Act (GMA) which requires "[e]ach county and city . . . [to] perform its activi-

ties and make capital budget decisions in conformity with its comprehensive plan." RCW 36.70A.120. The court therefore summarily reversed the decision of the Spokane City Council to accept the proposed Muirfield Annexation subject to the approval of the Boundary Review Board. The appeals by the City and Glenrose Associates raise a number of questions, but two are potentially dispositive.

The first is whether the superior court had jurisdiction to decide the case or whether, instead, the appeal from the Spokane City Council decision was premature. RCW 35.13.125. We conclude that the court had jurisdiction because the Association's action here is for declaratory relief and not an appeal as that term is used in the statute.

Second, and for us the dispositive question, is whether the court erred in requiring the City to comply with the County's comprehensive zoning plan (the only one covering the proposed annexation area) in order to comply with the GMA. RCW 36.70A.120. We conclude the court erred and therefore reverse the summary judgment in favor of Glenrose Community Association.

## FACTS

Glenrose Prairie abuts the southeast corner of the City of Spokane.[1] Settlers began farming there in the 1870s. Much of the area remains rural, although the western portion has been developed as residential neighborhoods. Spokane County's comprehensive plan designates Glenrose Prairie as semirural. The County has zoned the area SRR5, semirural, with a minimum tract requirement of five acres.

On June 24, 1993, several Glenrose Prairie property owners and would-be developers served the clerk of the City of Spokane with a "Notice of Intention to Annex." In that notice, they advised the clerk of their intent to begin annex-

---

[1]The proposed annexation includes the area bounded on the north by 37th Avenue, with Glenrose Road forming the east and south boundaries, and the city limits forming the west boundary.

ation proceedings by petition. RCW 35.13.130. They also represented that the assessed values of their property amounted to not less than 10 percent of the total assessed value of the property within the proposed annexation, as required by RCW 35.13.125. The owners of an additional 74 percent of the total assessed value were bound by annexation covenants that ran with their property. By these covenants, they had pledged to support annexation in return for city utility service.

On September 17, 1993, the City's Department of Planning Services, by its director, Charles Dotson, issued a Mitigated Determination of Non-Significance for the proposal. He concluded the annexation did not require an environmental impact statement. RCW 43.21C.030(2)(c). The Spokane City Plan Commission then held public meetings to consider and evaluate the proposal. In May 1995, the Plan Commission concluded it was in the public interest for the City to annex the "Muirfield Annexation,"[2] which covered the more developed portion of the Glenrose Prairie area. It found that the annexation of this smaller area was consistent with the City's Growth Management Policy as adopted in 1984. Further, the Commission found that the annexation was a logical extension of the city limits, and could be adequately served by city utilities. The Plan Commission noted that "[r]ecently approved plats [in] the annexation area [with lot sizes ranging from 22,000 square feet to 7,200 square feet] are more in line with the proposed City Zoning and Land Use Plan designations."

In the next step of the process, the Spokane City Council considered the proposal and decided whether to apply to the Boundary Review Board for approval of the proposed new city limits. The Council held public hearings on July 10 and July 24, 1995. It approved the Muirfield Annexation. The Council adopted the Plan Commission's findings, conclusions, and conditions. And it directed that a no-

---

[2]The name "Muirfield Annexation" was taken from "Muirfield Addition" and "Muirfield First Addition," the names of the portions of Glenrose Prairie that already had been developed as residential neighborhoods.

tice of its intent to annex be presented to the Boundary Review Board for approval.

On August 23, 1995, Glenrose Community Association sued the City and Glenrose Associates for declaratory judgment and certiorari. Glenrose Associates includes the landowners and developers who backed the proposed annexation. The Association wanted a declaration that:

(1) The City Council's decision to annex was contrary to Washington laws and public policy. Specifically, the decision was contrary to the right of the people to a healthful environment, as set forth in the State Environmental Policy Act (SEPA) and the Growth Management Act (GMA).

(2) The GMA required the City Council's decision to conform to the pre-GMA comprehensive plan of Spokane County.

(3) The annexation covenants violated the policies and principles of SEPA and the GMA.

(4) The Council could not properly rely on the annexation covenants absent a resolution to use them to support its annexation decision.

In May 1997, the Association moved for summary judgment, contending that the City had violated SEPA and the GMA, and had used the annexation covenants without observing proper procedures.

The court granted the Association summary judgment and reversed the City Council's approval of the annexation. It held that the City was bound by the Spokane County comprehensive plan until the City adopted a comprehensive plan under the GMA. The court relied on RCW 36.70A.120 (effective June 1, 1993, two years before the City Council's acceptance of the annexation proposal). That statute provides: "Each county and city that is required . . . to plan under RCW 36.70A.040 shall perform its activities and make capital budget decisions in conformity with its comprehensive plan." The court reasoned: "At the time, the City and County did not have a comprehensive GMA plan, but the County had an existing 1990 comprehensive

plan calling for large lot development in the Muirfield area. It makes sense . . . that the legislature did not intend cities to proceed willy-nilly to achieve annexation and urban development so as to beat impending GMA deadlines."

The court entered judgment, holding the City Council's decision was invalid because it did not conform to the County's comprehensive plan for the area. But it rejected the Association's arguments that the City had violated SEPA or that the County's interim urban growth boundaries, adopted on April 8, 1997, applied retroactively to the Muirfield Annexation.

The City and Glenrose Associates appeal.

DISCUSSION

*Jurisdiction.* The City and Glenrose Associates contend for the first time on review that the Association's action is an appeal of the Council's decision and, consequently, is prohibited by RCW 35.13.125. That statute provides "[t]here shall be no appeal from the [annexation] decision of the [City's] legislative body." Since the City's actions under RCW 35.13 are purely legislative, *State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 675-77, 409 P.2d 458 (1965), they argue the superior court lacked subject matter jurisdiction to hear the Association's suit.

■ RCW 35.13 sets out procedures to annex land contiguous to a city. Before circulating a petition of landowners requesting annexation, the initiating parties "shall notify the legislative body of the city . . . in writing of their intention to commence annexation proceedings." RCW 35.13.125. The initiating parties must own not less than 10 percent of the assessed valuation of the territory to be annexed. RCW 35.13.125. The legislative body (here the City Council) must then set a date, "not later than sixty days after the filing of the request," to meet with the initiating parties and determine whether the city will accept, reject, or geographically modify the proposed annexation. RCW 35.13.125. It is this determination that RCW 35.13.125

speaks to: "There shall be no appeal from the decision of the legislative body."

If the legislative body of the city accepts the proposed annexation or a modification of it, RCW 36.93.090 next requires it to file a notice of its intent to annex with the boundary review board. That board reviews the proposal, and either approves, disapproves, or modifies it. RCW 36.93.100. The board's decision is subject to superior court review. RCW 36.93.160(6).

If the board approves the proposal, then "[a] petition for annexation . . . may be made in writing addressed to and filed with the legislative body . . . ." RCW 35.13.130. "[T]he petition must be signed by the owners of not less than seventy-five percent in value . . . of the property for which annexation is petitioned[.]" RCW 35.13.130. "Following the hearing, the council . . . shall determine by ordinance whether annexation shall be made." RCW 35.13.150.

Here, the Association's lawsuit preceded the Boundary Review Board's consideration of the annexation proposal. RCW 35.13.125 precludes an "appeal" of the City Council decision. But the Association's action is not an appeal. It is an action for writ of certiorari and/or declaratory relief. RCW 7.16.040 provides the court shall issue a writ of review "to correct any erroneous or void proceeding . . . and there is no appeal, nor . . . any plain, speedy and adequate remedy at law." RCW 7.24.020 of the Uniform Declaratory Judgments Act provides: "A person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder."

Some of the issues raised by the Association call for relief that is available by way of a declaratory judgment. Specifically, the action alleged the City lacked authority to proceed with the annexation "in light of the public policies embodied in the Washington Growth Management Act

. . . ." Further, the Association alleged "[a] dispute exists as to whether the City . . . can engage in an action which is contrary to the Comprehensive Plan of Spokane County . . . ." Finally, the Association challenged the City's authority to use the annexation covenants.

The superior court granted the Association summary judgment, declaring the City was bound by the County's comprehensive plan for the proposed area. The court based its holding on its construction of RCW 36.70A.120. The court acted within the jurisdiction conferred by RCW 7.24.

 *Compliance with County's Comprehensive Plan.* The next issue is whether RCW 36.70A.120 requires the City to comply with the County's pre-GMA comprehensive plan. We conclude it does not.

"Each county and city that is required or chooses to plan under RCW 36.70A.040 shall perform its activities and make capital budget decisions in conformity with its comprehensive plan." RCW 36.70A.120. The statute is part of the GMA enacted by the Legislature in 1990 because it found that uncoordinated and unplanned growth posed a threat to health, safety and quality of life. RCW 36.70A.010; *King County v. Central Puget Sound Growth Management Hearings Bd.*, 91 Wn. App. 1, 13, 951 P.2d 1151 (1998). The City asserts that in July 1993 the Office of Financial Management certified that the populations of Spokane and Spokane County met the criteria for application of the GMA. RCW 36.70A.040(5). Among other things, the GMA required the County to adopt a county-wide planning policy and designate urban growth areas. RCW 36.70A.040(5)(a), (c). The City and the County also had to "adopt a comprehensive land use plan . . . within four years of the certification . . . ." RCW 36.70A.040(5)(d).

Neither the City nor Spokane County had adopted a comprehensive plan pursuant to the GMA at the time the City Council decided to accept the annexation proposal (1995) and submit it to the Boundary Review Board. The superior court, however, construed RCW 36.70A.120 to require the City to conform to the County's pre-GMA

comprehensive plan. The County's comprehensive plan called for large lot development for the area subject to the annexation proposal. So the court held the Council erred as a matter of law when it accepted a proposal which did not conform to that plan.

The superior court's interpretation is at odds with the structure of RCW 36.70A.120. That statute requires a city or a county that is subject to the GMA to act "in conformity with its comprehensive plan." "Comprehensive plan" as used in RCW 36.70A.120 is limited by the definition of that phrase found in RCW 36.70A.030(4). Specifically, "comprehensive plan" "means a generalized coordinated land use policy statement of the governing body of a county or city *that is adopted pursuant to this chapter.*" (Emphasis added.) The parties agree that at the time of the City Council's decision the City and the County had not adopted GMA plans. Since no GMA plans were in effect, the City could not have violated either the County's GMA plan or its own. *CLEAN v. City of Spokane*, 133 Wn.2d 455, 465-66, 947 P.2d 1169 (1997), *cert. denied*, 119 S. Ct. 45 (1998).

The Association also contends RCW 35.63.125 requires the City to conform to the County's comprehensive plan. That statute provides: "Beginning July 1, 1992, the development regulations of each city and county that does *not* plan under RCW 36.70A.040 shall not be inconsistent with the city's *or* county's comprehensive *plan.*"[3] (Emphasis added.) But the use of "or" in the statute, as well as the use of the singular when referring to the "comprehensive plan," indicates a legislative intent that the City comply with its comprehensive plan and the County comply with its comprehensive plan. If the Legislature had intended otherwise, it would have required that the development regulations of each city and county be consistent with both the city's and the county's comprehensive *plans*. It did not.

---

[3]RCW 35.63.125 provides that the term " 'development regulations' has the same meaning as set forth in RCW 36.70A.030." RCW 36.70A.030(7) defines "development regulations" as meaning "controls placed on development or land use activities by a . . . city, including . . . zoning ordinances . . . ."

The court erred by requiring the City to conform its actions to the County's pre-GMA comprehensive plan.

*Alternative Theories.* The Association nevertheless urges us to affirm contending: (A) The Council's decision violated the public policy of this state, as set forth in SEPA and the GMA, or (B) the Council's reliance on the annexation covenants was improper.

A. Did the council's decision violate the public policy of this state, as set forth in SEPA and the GMA?

■ SEPA. RCW 43.21C.222 exempts the annexation of territory by a city or town from compliance with SEPA. Nevertheless, the City here considered SEPA and issued a Mitigated Determination of Non-Significance. The City perhaps did so because SEPA provisions apply to decisions by the Boundary Review Board, the agency that approves the City's request for annexation. *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 659, 860 P.2d 1024 (1993). Any appeal concerning application of SEPA in this case must await the Boundary Review Board's decision.

■ GMA. The Association argues the City's annexation decision is contrary to the GMA's policy against urban sprawl. However, as set forth above, in *CLEAN*, 133 Wn.2d at 465-66, the court held the city had not violated the GMA by actions it took before July 31, 1997, the date the Act required first class cities to implement comprehensive plans. Implicit in this holding is the conclusion that GMA policy, as well as its express provisions, does not apply before the date the Act required GMA counties and cities to implement their comprehensive plans.

B. Was the City's reliance on the annexation covenants improper?

■ First, the City Council did not need the support of owners of 75 percent of the assessed property value to accept the annexation proposal and seek Boundary Review Board approval of it. RCW 35.13.125 requires only that the initiators of such a proposal own 10 percent of the assessed property value of the area within the proposed annexation.

The initiators represent that percentage. And their support was not based on the annexation covenants. It is only *after* Boundary Review Board approval that supporters of annexation must present the City Council with a petition signed by owners of 75 percent of the assessed property value. If that percentage is satisfied, then the City will annex the area by ordinance. Thus, the question of whether property owners bound by annexation covenants count toward that 75 percent does not even arise until after the Board approves the proposal. The Association filed this declaratory action before that stage of the proceedings. Therefore, the question raised by the Association regarding the annexation covenants is not properly before this court.

In any event, the Association's argument that such covenants are unenforceable because they undermine public policy is not well taken. The Association relies on *People for the Preservation & Dev. of Five Mile Prairie v. City of Spokane*, 51 Wn. App. 816, 755 P.2d 836 (1988). As the City points out, that case does not hold that such covenants must be consistent with the public policy of the State. It merely rejected the argument the covenants violated the property owners' First Amendment rights. *Five Mile Prairie*, 51 Wn. App. at 820-21.

Neither SEPA nor GMA policy issues, nor those issues involving the annexation covenants, provide an alternate basis for affirming the superior court.

*Urban Growth Areas*. Finally, the Association relies on RCW 35.13.005, which provides: "No city or town located in a county in which urban growth areas have been designated under RCW 36.70A.110[4] may annex territory beyond an urban growth area." It asserts that the GMA's requirement that counties designate urban growth areas circumscribed the City's exercise of its annexation authority in 1995, prior to Spokane County's interim designation of such areas in 1996.

---

[4]RCW 36.70A.110(5) states that "all . . . counties that are required or choose to plan under RCW 36.70A.040 shall adopt development regulations designating interim urban growth areas under this chapter."

■ In *King County*, the court addressed the question of whether the designation of urban growth areas under the GMA has retroactive effect, so as to prohibit annexations of nonurban growth areas during the time period the county is required to begin planning under the GMA. The court answered "no." *King County*, 122 Wn.2d at 681. It reasoned: "Nothing in the GMA at the time of the [Boundary Review] Board's decision, however, explicitly required a moratorium on annexation activity in the period prior to the designation of the urban growth areas." *Id.* To the contrary, the court noted RCW 36.93.230 "allows counties to disband their boundary review boards *after* the completion of the plans required by the GMA, including designation of urban growth areas." *King County*, 122 Wn.2d at 681. The court therefore concluded "the GMA explicitly contemplated the continued activity of the boards prior to the designation of the urban growth areas. This explicit provision indicates that the GMA was not intended to replace the [Boundary Review Board] Act pending the designation of the urban growth areas." *Id.*; *see also Vashon Island Comm. for Self-Government v. Boundary Review Bd.*, 127 Wn.2d 759, 903 P.2d 953 (1995). There, the court stated, at page 769: "[T]he event that triggered application of the statute governing the Board's actions was the King County Council's request of the Board to review the proposed incorporation." Here, the Spokane City Council referred the proposed annexation to the Boundary Review Board in 1995, well before the County's designation of interim urban growth areas.

The court properly held the interim urban growth areas did not apply retroactively to the City's 1995 acceptance of the proposed annexation.

We reverse the superior court. Neither RCW 36.70A.120 nor RCW 35.63.125 required the City to conform its annexation decisions to the County's pre-GMA comprehensive plan. The alternate theories advanced by the Association do not support a holding the City Council's decision to seek Boundary Review Board approval of its annexation decision was invalid.

852

KURTZ, A.C.J., and BROWN, J., concur.

Review denied at 138 Wn.2d 1009 (1999).