[No. 78578-3. En Banc.]
Argued June 13, 2006. Decided November 9, 2006.

INTERLAKE SPORTING ASSOCIATION, INC., ET AL., *Appellants*, v. THE WASHINGTON STATE BOUNDARY REVIEW BOARD FOR KING COUNTY ET AL., *Respondents*.

546

*J. Richard Aramburu* (of *Law Office of J. Richard Aramburu*), for appellants.

*James E. Haney* (of *Ogden Murphy Wallace, P.L.L.C.*); *Robert C. Kaufman* (of *Herman, Recor, Araki, Kaufman, Simmerly & Jackson, P.L.L.C.*); *Norm Maleng, Prosecuting Attorney for King County*, and *Darren E. Carnell* and *Stephanie M. Hicks, Deputies*, for respondents.

¶1 J.M. JOHNSON, J. — Property owners Interlake Sporting Association, Inc., and Gerald K. Hirschler (Interlake) appeal a King County Superior Court decision affirming a decision of the Washington State Boundary Review Board for King County (BRB). The BRB's decision required the city of Redmond to annex a 184-acre area—more than three times the size of the 58.96-acre area defined in the petition for annexation signed by affected property owners and approved by Redmond ordinance. Interlake owns private property in the area which would not have been annexed under the filed petition. Interlake contends the BRB erred in expanding the area sought by the petition and that the superior court erred in upholding that decision. BRB is joined by King County and Redmond in support of the superior court's decision. Redmond thus is now opposing its own ordinance.

¶2 We hold that the BRB erred, as a matter of law, by expanding the area sought by the petition from approximately 59 acres to 184 acres. The BRB's decision does not comport with statutory provisions governing annexation or with the legislative policy favoring consensual annexations. Here, property owners residing outside of the 59 acres had no opportunity to sign or oppose the petition for annexation. The BRB also erred when it made those same property owners residing outside of the 59 acres subject to preexisting city indebtedness and zoning. Constitutional considerations also support our conclusions. However, Interlake is not entitled to attorney fees under any established exception to the "American rule" against attorney fees.

FACTS AND PROCEDURAL HISTORY

¶3 This dispute involves a 184-acre area of land between the cities of Kirkland and Redmond. Redmond has at-

tempted to annex all or part of this area several times since 1998. In 2002, Redmond sponsored and conducted an annexation election for all the residents and property owners in the entire 184-acre area. The annexation proposal was solidly defeated by a 58 to 42 percent vote margin. Thereafter, Redmond continued more limited annexation efforts for a reduced area through a new signature gathering effort.

¶4 Redmond examined the election results and restricted the potential annexation area to an area substantially populated with "Yes" voters in the 2002 election. Redmond circulated petitions for annexation of this smaller area, consisting of some 76.63 acres. Insufficient support remained, and that effort was unsuccessful. Due to this lack of sufficient signators, the area was again reduced to a boundary that encompassed 58.96 acres, and a new petition circulated.

¶5 The effort for the smaller revised annexation area gathered signature support of 60 percent of property owners. On April 20, 2004, Redmond filed with the BRB a notice of intention to annex a "76-acre area," which it referred to as "Phase I." In June 2004, Redmond discovered it had inadvertently designated the area as the "76.63 acres area" in which insufficient signatures had been gathered. The notice of intention was corrected to show only the 58.96 acres that did have the 60 percent ownership signatures. The land owned by the Interlake landowners was not included within Redmond's annexation notice.

¶6 A final notice of intention for the 58.96 acres was publicized and sent to various agencies, including King County. On June 4, 2004, just before the statutory response deadline, King County filed a request that the BRB exercise its jurisdiction over the annexation request. In a letter, King County requested the annexation area be expanded to include the entire 184-acre area previously rejected by voters. As required by RCW 36.93.160, the BRB set a date

for a public hearing on the annexation request for July 15, 2004.

¶7 The BRB received considerable comment on the annexation proposal. Eighty-four citizens submitted comments or petition signatures in opposition to annexation of King County's proposed expanded area. Only two comments in the record supported that annexation. Redmond also wrote the BRB, opposing the King County proposal for annexation of the larger area. Redmond stated its intention to annex areas of strong support.

¶8 At two public hearings held by the BRB, there was substantial opposition to the expanded annexation request of King County. The planning manager for Redmond, Rob Odle, testified in support of the annexation of the 59 acres and in opposition to the 184-acre request. The vast majority of speakers also opposed King County's expanded annexation request. Indeed, only King County officials supported the 184-acre annexation request at the first hearing in July. Only one person supported the 184-acre annexation at the second hearing in August.

¶9 At the close of the second hearing, the BRB approved the annexation of the larger 184-acre area by a vote of six to four. On September 28, 2004, the BRB adopted findings and conclusions prepared by counsel, approving King County's 184-acre request.

¶10 Plaintiffs filed a timely notice of appeal in the King County Superior Court. The superior court issued a brief memorandum opinion and subsequently entered a judgment affirming the decision of the BRB requiring the 184-acre annexation. *See* Clerk's Papers at 611-14, 622-23. Plaintiffs appealed to the Court of Appeals, which later transferred the case to this court.[1]

---

[1] It is not readily apparent why Redmond reversed its position and now supports King County and the BRB. In so doing, Redmond declines to defend its own ordinance effecting annexation of the 59-acre area.

STANDARD OF REVIEW

 ¶11 Upon appeal of a superior court decision reviewing a boundary review board decision, we apply the standards contained in RCW 36.93.160(6) directly to the record before the board rather than to the decision of the superior court. *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 671-72, 860 P.2d 1024 (1993). Under RCW 36.93.160:

> (6) The superior court may affirm the decision of the board or remand the case for further proceedings; or it may reverse the decision if any substantial rights may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) In violation of constitutional provisions, or
>
> (b) In excess of the statutory authority or jurisdiction of the board, or
>
> (c) Made upon unlawful procedure, or
>
> (d) Affected by other error of law, or
>
> (e) Unsupported by material and substantial evidence in view of the entire record as submitted, or
>
> (f) Clearly erroneous.

We review all issues of law de novo. *See, e.g., Snohomish County Fire Prot. Dist. No. 1 v. Wash. State Boundary Review Bd.*, 155 Wn.2d 70, 76, 117 P.3d 348 (2005) ("This court reviews the jurisdiction issue de novo, relying on the evidence in the administrative record." (citing RCW 36-.93.160(5); *Wash. State Boundary Review Bd.*, 122 Wn.2d at 671-72)).

ANALYSIS

Citizen Consent to Annexation

¶12 Interlake argues that the proposed annexation violates statutory annexation procedures—specifically those procedures requiring property-owner consent. Interlake also argues the proposed annexation violates the annex-

ation statute because it involves wholesale expansion of territory by the BRB to encompass property and property owners who were never given opportunity to voice consent.[2] For reasons indicated below, we hold that the proposed annexation is contrary to statutory property-owner consent and boundary modification provisions in chapters 35A.14 RCW and 36.93 RCW. Due process considerations also support our conclusion.

■ ¶13 This court has unanimously concluded that article I, section 12 of the Washington Constitution does *not* prohibit the landowner petition method for annexation. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812-14, 83 P.3d 419 (2004) (*Grant County II*); *id.* at 817-21 (Sanders, J., concurring). The court in dicta stated that "the *legislature* enjoys plenary power to adjust the boundaries of municipal corporations and may authorize annexation without the consent of the residents and even over their express protest." *Id.* at 813. However, where the legislature exercises its power to statutorily require consent to annexations and to limit municipal corporations in adjusting boundaries, this court will uphold those statutory requirements.

*1. Annexation statute and the boundary review board act (chapter 36.93 RCW)*

■ ¶14 The statutory methods of annexation for optional municipal code cities *all* provide mechanisms for majority consent of those being annexed—either by election, petition requirements, or referendum. *See* RCW 35A.14.015-.100 (election method); RCW 35A.14.120-.150 (direct petition method); RCW 35A.14.420-.450 (alternate direct petition method); RCW 35A.14.460-.470 (interlocal

---

[2] Interlake's opening brief regards violation of statutory provisions for citizen approval and improper wholesale expansion of annexation by BRB as separate issues. However, these two claims appear to be the flip sides of the same coin. Statutory provisions require consent of citizens subject to proposed annexation, whereas proposed annexation can only extend to territory where citizens have given consent pursuant to statute. Because Interlake's claims in this regard are so intertwined, we treat them as a single claim.

agreement method); RCW 35A.14.295-.299 (unincorporated island).

¶15 Statutory provisions enable the annexing government to include in a petition the signators'/owners' specific agreement to assume municipal indebtedness and accept pre-annexation zoning. RCW 35A.14.120.

¶16 Annexations proceed solely in accordance with chapter 35A.14 RCW, unless boundary review board jurisdiction is invoked. Pursuant to RCW 35A.14.001, all annexations by municipal code cities are "subject to potential review by a boundary review board under chapter 36.93 RCW." However, only upon formal request by a party with standing does a boundary review board gain jurisdiction. If its jurisdiction is invoked, the boundary review board conducts a public hearing to gather evidence and testimony regarding the proposal. RCW 36.93.100. Following the hearing, the boundary review board may approve, deny, or modify the boundaries of the proposed annexation. RCW 36.93.150.

¶17 The current annexation proposal was adopted pursuant to the direct petition method authorized by RCW 35A.14.120-.150. Such annexation is initiated by submission to the city of a petition signed by property owners possessing not less than 10 percent of the value of property within the defined geographical area. Next, the initiating parties must meet with the city to "determine whether the code city will accept, reject, or geographically modify the proposed annexation." RCW 35A.14.120. If accepted by the city, a second petition is circulated. *Id.* If the owners of properties equal to 60 percent of the assessed valuation within the designated area sign the petition, it is approved. *Id.* Under RCW 35A.14.130, the direct petition method requires further public hearing as the annexing city. After such a public hearing, RCW 35A.14.140 provides that the local legislative body (here, Redmond's city council) may effect the annexation by adoption of an ordinance. The annexation authority "may annex all or any portion of the proposed area but may not include in the annexation any property not described in the petition." *Id.*

¶18 Interlake argues that RCW 35A.14.140 prohibits the expansion of annexations initiated by petition beyond the original area, focusing on limiting language in the statute, which provides that a municipality may annex "all or any portion of the proposed area" in the petition but "may not include in the annexation any property not described in the petition." RCW 35A.14.140.

¶19 RCW 35A.14.140 prevents *any* new territory from being added at the final city ordinance. But a city can accept, reject, or geographically *modify* proposed annexation at earlier stages. This court recognized as much in *Grant County* II, 150 Wn.2d at 814. However, for example, such modifications can be made pursuant to the earlier meeting with the city and prior to the circulation of the amended petition.

¶20 Here, because Redmond failed to propose to annexation proponents that the annexation area should be larger, the later increased area of annexation violates RCW 35A.14.140. Following the required meeting, Redmond approved the petition for the proposed annexation of only 59 acres. Redmond later clarified that its ordinance effectuating the proposed annexation petition extended only to those 59 acres. In light of RCW 35A.14.140, the originating local government cannot add new area to a petition method annexation area, and the reviewing body, the BRB, also has no authority to do so.

¶21 King County and the BRB argue that chapter 36.93 RCW, the boundary review board act (BRB Act), gives the boundary review board authority to expand proposed annexation areas, but these arguments are unpersuasive. The authority of boundary review boards under RCW 36.93.150 to "modify" or "adjust" boundaries is best understood to allow "adjusting" boundary changes that do not add to the total acreage.

¶22 This court will not amend the statute to add the word "expand" to the boundary review boards' statutory mandate adopted by the legislature (chapter 36.93 RCW). Inclusion of that term would have been the straightforward

way for the legislature to confer the argued power, but the legislature did not do so. It is also worth noting that King County does not have any authority to propose or expand annexation areas directly. To allow it to accomplish the same through the boundary review "adjustment" process is inconsistent with the statutory scheme.

¶23 King County and the BRB contend that boundary review boards determine whether each proposal satisfies statutory criteria set forth in the BRB Act and the Growth Management Act (GMA) (discussed further below), chapter 36.70A RCW. As a general proposition, this is correct. But it does not give the boards the broad power claimed here. RCW 36.93.150 expressly authorizes the modification of a proposed annexation if there is evidence that the annexation would be "inconsistent with one or more of the [statutory] objectives." RCW 36.93.150 expressly provides that the existing annexation petition remains valid without the need for additional signatures, but only where the petition for annexation had previously satisfied the sufficiency of signature provisions of RCW 35A.14.120. Here, the petition did not satisfy requirements if the larger area—and substantially greater population—is considered.

¶24 The BRB also argues that it found that other statutory considerations support annexation of the entire 184-acre area. It claims that because Interlake does not challenge the BRB's findings relating to RCW 36.93.180, all such findings are verities on appeal. However, we hold as a matter of law that the BRB's decision violates the terms of RCW 35A.14.140 and RCW 36.93.150. Thus, it is irrelevant whether substantial evidence may support (often uncontested) findings regarding areas (and voters) not properly before the BRB. The BRB has violated the statutory provisions, and its decision is beyond its legal authority.

¶25 The position urged by King County and the BRB is also disturbing as a matter of due process. *See* U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. The proposed annexation here would extend to *three times* the area of the

original proposal and include a majority of people who opposed earlier requests to annex them into the city.

¶26 We reject this effort to frustrate statutory provisions, which all require some form of property owner support for annexation. The direct petition method, in particular, specifies that the annexation petition must include the area proposed to be annexed, which is then subject to a vote by the city's legislative body. RCW 35A.14.140. The legislative body is only empowered to "annex all or any portion of" the area in which the petitioning property owners reside. *Id. See also Grant County II*, 150 Wn.2d at 814. The long-established statutory scheme for annexation as a matter of agreement between Redmond and the new citizens does not give authority to the BRB to force annexation on unwilling property owners. As previously noted, the moving party here, King County, has no such authority—indeed, no authority at all to propose this annexation. Local government, as well as boundary review boards, must comply with the statutory process. Due process considerations support this conclusion.

### 2. *Annexation and the Growth Management Act*

¶27 The BRB argues that the GMA and the BRB Act are intertwined and that court decisions have found the GMA to be of importance in annexation. This court has upheld the general proposition of consistency with the GMA. For reasons that follow, we reject the contention that the legislature somehow chose to significantly amend this state's long-standing scheme for annexation through adoption of the GMA.

¶28 First, the GMA did not directly amend the annexation statutes in this respect. (See also discussion of interlocal agreement annexation below.)

¶29 In *Vashon Island Committee for Self-Government v. Washington State Boundary Review Board*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995), this court observed:

An examination of the entire chapter governing boundary review boards reveals that when a boundary review board is located in a county that is either required or chooses to plan subject to the Growth Management Act, its decisions must be consistent with certain provisions of the Growth Management Act including RCW 36.70A.110. RCW 36.93.157.

¶30 In *Vashon Island,* this court recognized that boundary review board decisions must be carried out in a manner consistent with the GMA. Nonetheless, the general proposition of consistency with the GMA must also recognize specific limitations in the annexation statute and the BRB Act. Nothing in RCW 36.93.157 either suggests or implies that the GMA either supersedes the particular provisions of the annexation statutes or adds powers to the BRB.

¶31 The only statutory provisions that incorporate the GMA policies into annexation proceedings are RCW 35A-.14.460 and .470. Those provisions permit the elimination of petitions or elections for code cities where the city and county enter into an "interlocal agreement" for annexation. The statute provides that any annexation ordinances "are subject to referendum for forty-five days after passage." RCW 35A.14.470(5). If a majority of voters oppose the annexation, it is defeated without the possibility of appeal. *Id.* Clearly, King County and Redmond did not choose to use the GMA-based annexation method in this case (presumably because it would likely be defeated in a referendum as it had been in an earlier election).

¶32 Furthermore, *Vashon Island* is distinguishable from the present case. At issue in *Vashon Island* was whether the BRB could be compelled by mandamus to review an incorporation proposal in an area outside of the urban growth boundary. RCW 36.93.150(2) directly prohibits incorporation of areas "outside of an urban growth area." Here, however, the property is within the urban growth area. *Vashon Island* does not apply to this case.

¶33 Whether substantial evidence supports the BRB's six to four vote to expand the annexation is not determinative or even relevant. This case presents threshold issues that must be decided as a matter of law. Nothing in the

language of the GMA indicates that the legislature chose to alter this state's long-standing statutory scheme for annexation.

¶34 In sum, the general proposition of consistency with the GMA is correct. *See Vashon Island*, 127 Wn.2d at 771. But lacking any clear conflict, that general proposition must give way to the specific provisions contained in the annexation statute and the BRB Act. The GMA's "interlocal agreement" method was not exercised here, and the cases cited by King County and BRB are not applicable.

Liability for Pre-annexation Indebtedness and Zoning[3]

¶35 Interlake argues the BRB cannot impose Redmond's pre-annexation indebtedness on property owners outside the petition area: "*no* taxation without representation." We agree with Interlake, holding that a boundary review board cannot subject the property owners residing outside of the 58.96 acre area to taxation for such indebtedness.

¶36 The direct petition method in RCW 35A.14.120 allows the city to determine "whether it shall require the assumption of all or of any portion of existing city indebtedness by the area to be annexed." If the city requires such assumption of indebtedness, "it shall record this action in its minutes and the petition for annexation shall be so drawn as to clearly indicate these facts." *Id.*

¶37 The annexation petition here did contain provisions that the annexed properties accept their proportionate share of the city's indebtedness. Owners possessing at least 60 percent of property value within the original 58.96-acre area assented by signing the petition.

¶38 However, no owner outside of the original 58.96-acre area (but within the BRB's 184-acre annexation area) ever assented to be taxed for such indebtedness. This includes

---

[3] Analysis of Interlake's pre-annexation indebtedness and zoning claims illuminates the annexation statute's emphasis upon property owners' consent. Analysis of those two claims is also necessary to provide a full evaluation of Interlake's request for attorney fees.

the Interlake appellants. None were even given the opportunity to agree to assuming this substantial indebtedness. The BRB's decision, in this regard, is also beyond its authority.

¶39 A boundary review board has no power to subject unrepresented property owners to taxation for pre-annexation indebtedness or zoning under RCW 35A.14.120. Such liability requires an express provision in the petition under the plain terms of RCW 35A.14.120. The terms of that provision would be meaningless if indebtedness and zoning could be imposed upon property owners who were never afforded any opportunity to consider the petition.

¶40 The statutory provisions do not require unanimous consent but do require representation through a supermajority requirement of 60 percent.

¶41 Here, the legislature's statutory system required the conclusion that neither the BRB nor Redmond can subject property owners residing outside of the 58.96-acre area to preexisting debt.

¶42 Interlake similarly argues that the BRB cannot impose Redmond's pre-annexation zoning under chapter 35A.14 RCW. We agree. Procedures for pre-annexation zoning under the direct petition method are also provided in the same statute, RCW 35A.14.120.

¶43 Boundary review boards cannot impose a city's pre-annexation zoning upon property owners outside the area of petition (and notice) under chapter 35A.14 RCW. Pre-annexation zoning also requires an express provision in the petition under the plain terms of RCW 35A.14.120 and .130. Pre-annexation zoning cannot be imposed upon property owners who were never given the opportunity to consider the petition.

¶44 Here, the Interlake property outside of the 58.96-acre area was not included and so no zoning—or proposed

zoning—was considered by those owners or any owner representing them.[4]

## Attorney Fees and the Common Fund Exception

¶45 Finally, Interlake argues that it should be entitled to attorney fees. For reasons that briefly follow, we must deny its request.

¶46 Pursuant to the "American rule," courts do not award attorney fees to either party. Courts may award attorney fees as part of the costs of litigation *only* when there is a contractual, statutory, or recognized equitable basis. *Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984), *overruled in part on other grounds by Blue Sky Advocates v. State*, 107 Wn.2d 112, 727 P.2d 644 (1986). Here, there is no private agreement or statute for attorney fees. Interlake seeks attorney fees on an equitable basis.

¶47 Specifically, Interlake demands attorney fees based on the "common fund" doctrine, under which attorney fees can be awarded in cases "where litigants preserve or create a common fund for the benefit of others as well as themselves." *Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995) (citing *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70-71, 847 P.2d 440 (1993); *Pub. Util. Dist. No. 1 of Snohomish County v. Kottsick*, 86 Wn.2d 388, 390, 545 P.2d 1 (1976)). Interlake relies primarily upon *Covell* and *Miotke*. It asks attorney fees from respondents because it has conferred a "substantial benefit" on other property owners within the expanded annexation area who would otherwise be subject to Redmond's preexisting debt and pre-annexation zoning.

¶48 Respondents insist no common fund will be created or preserved if Interlake prevails in this case. We must agree with respondents.

¶49 Here, there is a readily ascertainable class: those property owners outside of the 59-acre area of the annex-

---

[4] It is also not clear what city zoning would apply; presumably areas outside the city would not have been included in prior city zoning.

ation proposal but in the 184-acre area. By virtue of Interlake's contesting the BRB's decision, all these property owners have arguably been conferred a benefit by remaining free of taxation for Redmond's indebtedness and unencumbered by Redmond's pre-annexation zoning. However, there is no common fund created from which attorney fees may be drawn. *See Miotke*, 101 Wn.2d at 339-40. The common fund doctrine is an exception to the general "American rule," which must be narrowly construed. This court will not expand the exception to swallow the rule.

¶50 We therefore deny Interlake's request for attorney fees.

CONCLUSION

¶51 We reverse the superior court and hold that the BRB erred as a matter of law in ordering the expansion of area from the 58.96-acre area described in the annexation petition signed by property owners to the 184 acres advocated by the county. This action violates applicable statutes and so was beyond the authority of the BRB. We deny Interlake's request for attorney fees for reasons stated above.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, and CHAMBERS, JJ., concur.

¶52 OWENS, J. (dissenting) — I dissent. Contrary to the claims of petitioners Gerald K. Hirschler and Interlake Sporting Association, Inc., the decision of the Washington State Boundary Review Board for King County (the Board) to increase the territory of the city of Redmond's proposed annexation was not "[i]n excess of the statutory authority or jurisdiction of the board," "[m]ade upon unlawful procedure," or "[a]ffected by other error of law." RCW 36.93-.160(6)(b)-(d).

¶53 The annexation statutes in chapter 35A.14 RCW govern the city of Redmond (the City), a noncharter op-

tional municipal code city. RCW 35A.14.001 explicitly provides that any annexation "[a]ctions taken under chapter 35A.14 RCW may be subject to potential review by a boundary review board under chapter 36.93 RCW." When a "governmental unit affected" by the proposed annexation invokes the board's review (as King County did in this case), the board must review the proposed action and "approve, disapprove, or *modify*" it. RCW 36.93.100(2), .100 (emphasis added). The legislature expressly empowered the board "to *modify* the proposal by *adjusting* boundaries to *add* or delete territory." RCW 36.93.150(2) (emphasis added). The word "modify" means "change" or "ALTER," the word "adjust" means "RECTIFY" or "bring to a more satisfactory state,"[5] and the word "add" means "add." In plainest terms, the legislature authorized the board to *change* the boundaries of a city's proposed annexation by *adding* territory in order *to create a more satisfactory territory for annexation.* Indeed, the legislature set forth nine objectives to guide the board's creation of an optimally satisfactory annexation area, and it authorized the board to add territory if the annexation as originally proposed was found to be "inconsistent with" even one of the nine objectives in RCW 36.93.180. *See* RCW 36.93.150. In the present case, the Board concluded that the annexation proposal failed to satisfy any of the objectives of RCW 36.93.180 and that annexation of the entire Rose Hill neighborhood was necessary to meet the legislature's statutorily defined requirements.

¶54 The majority claims that the Board added too much territory, but the legislature imposed *no* mathematical limitation on a board's authority to add to *a city's* proposed annexation territory. Had the legislature wanted to limit in some mathematical way a board's discretionary application of the nine objectives in RCW 36.93.180, the legislature certainly knew how to do so. Immediately following the legislature's general authorization of the board to add

---

[5] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1452, 27 (2002).

annexation territory, the legislature expressly limited the board's authority to add to *a town's* proposed annexation territory:

> However, any proposal for annexation of territory *to a town* shall be subject to RCW 35.21.010 and the board shall not add additional territory, the amount of which is greater than that included in the original proposal.

RCW 36.93.150(2) (emphasis added). Thus, with respect to *a town's* annexation of territory, the legislature limited the board's power of addition to doubling the size of the proposed annexation area, while in contrast the legislature placed no such limitation on the board's authority to augment *a city's* proposed annexation area to satisfy the statutorily prescribed objectives. Notably, although the majority contends that in the present case the Board added too much, the majority can point to no legislative enactment that would tell a board *how* much is *too* much.

¶55 An additional provision in RCW 36.93.150 likewise underscores that the legislature in no way limited the board's authority to add territory to a city's originally proposed annexation area:

> A proposal that has been modified shall be presented under the appropriate statute for approval of a public body and if required, a vote of the people. If a proposal, *other than that for a city*, *town, or special purpose district annexation*, after modification does not contain enough signatures of persons within the modified area, as are required by law, then the initiating party, parties or governmental unit has thirty days after the modification decision to secure enough signatures to satisfy the legal requirement. If the signatures cannot be secured then the proposal may be submitted to a vote of the people, as required by law.

RCW 36.93.150 (emphasis added). Here, the legislature put to rest any notion that, following the board's addition or deletion of territory, a city would have to circulate a new annexation petition and secure the signatures of those owning at least 60 percent of the assessed value of the newly defined annexation area. As the legislature un-

equivocally stated, the board's "addition or deletion of property . . . shall not invalidate a petition which had previously satisfied the sufficiency of signature provisions of RCW 35.13.130 or 35A.14.120." *Id.* The statute makes it apparent that the legislature considered whether the board's addition of property to *a city's* annexation should require a new petition, and the statute also shows that the legislature deliberately chose not to impose such a requirement on *a city's* annexation process. In sum, I see no way that the legislature could have possibly made it any clearer (1) that the board's authority flows directly from the provisions of chapter 36.93 RCW and (2) that its authority is not limited by the annexation statutes in chapter 35A.14 RCW.

¶56 The majority makes consent the linchpin of its analysis, but contrary to the majority's apparent belief, annexation is not contingent upon the consent of every citizen—or even a majority of citizens—affected by the petition method of annexation. As this court has acknowledged, the legislature has the power to " 'annex or authorize the annexation of contiguous or other territory *without the consent* and *even against the remonstrance of the majority of persons* in either the annexed territory or the corporation to which it is being joined' ": "The power is entirely that of the legislature, which may delegate to the cities." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 813-14, 83 P.3d 419 (2004) (quoting *State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 680, 409 P.2d 458 (1965)). Likewise erroneous is the majority's claim that the City lacks authority to subject property owners in the modified annexation territory to the City's preexisting indebtedness and zoning. As noted above, the legislature has specifically declared that the original annexation petition (or 60 percent petition)—which by statute addresses the issues of preexisting indebtedness and zoning—supports the annexation proposal as modified by the board. *See* RCW 36.93.150; RCW 35A.14.120. A city's decisions as to preexisting debt and zoning are not subject to board review (which focuses on the factors in RCW 36.93.180), nor are such decisions contin-

gent on the consent of a majority of taxpayers. *See* RCW 35A.14.120.

¶57 Finally, I believe the majority opinion could be much clearer in two respects. First, in its role as super-legislature, the majority should clarify its rewrite of the real legislature's statute. My understanding is that the majority has added five words to the first sentence of RCW 36.93-.150(2): "The board . . . shall . . . modify the proposal by adjusting boundaries to add or delete territory *but not too much territory*." It would also seem that the majority has necessarily added the following definition to RCW 36.93-.020: " 'Too much territory' means more territory than we would have added." Second, in its role as super-boundary review board, the majority should explain the result of its negation of the real board's authority. In light of the Board's unchallenged finding that the proposed annexation satisfied *none* of the statutory criteria of RCW 36.93.180, the proposed annexation could not be approved. If, as the majority concludes, the Board lacked the authority to add territory, the only possible result is that the majority is disapproving the City's original annexation proposal. But given the vagueness of the majority opinion, I am uncertain whether the majority believes it is leaving the original annexation proposal in play.

¶58 Rather than rewriting the governing statutes and leaving the City without an annexation proposal, I would accept the legislature's plain language and would conclude, as the superior court did in its de novo review, that the Board properly exercised its statutorily defined authority to modify the City's proposed annexation.

MADSEN, BRIDGE, and FAIRHURST, JJ., concur with OWENS, J.

Reconsideration denied February 5, 2007.